Cynthia A. Tolman, as Administratrix, etc., Respondent, *v.* The Syracuse, Binghamton and New York Railroad Company, Appellant.

In an action for negligence causing death, the burden of establishing affirmatively freedom from contributory negligence is upon the plaintiff; and while, although there were no eye-witnesses of the accident, and although its precise cause and manner of occurrence are unknown, absence of contributory negligence may be established, sufficiently to make it a question of fact for the jury, by proof of such facts and surrounding circumstances as reasonably indicate or tend to establish that the accident might have occurred without negligence on the part of the deceased; yet if the facts and circumstances, coupled with the occurrence of the accident, do not indicate or tend to establish the existence of some cause or occasion therefor which is consistent with proper care and prudence, the inference of negligence is the only one to be drawn, and defendant is entitled to a nonsuit.

T. Plaintiff's intestate was killed at a crossing on defendant's road. The road crossed the track at an acute angle. There was no obstacle to prevent seeing an approaching train for more than half a mile from the crossing. T. was driving a gentle horse, and the condition of the road was such as to prevent fast driving. The night was dark and misty, but it appeared by plaintiff's own witnesses that the head-light of the engine could have been seen at a distance much more than sufficient to have given him warning, and had he been looking, to have enabled him to escape injury. *Held,* that the evidence was insufficient to make the question of contributory negligence one of fact; and that a refusal to nonsuit was error.

*Tolman* v. *Syr., B. & N. Y. R. R. Co.* (31 Hun, 397), reversed.

(Argued January 22, 1884; decided February 10, 1885.)

Appeal from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made October 2, 1883, which affirmed a judgment in favor of plaintiff, entered upon a verdict. (Reported below, 31 Hun, 397.)

This was an action to recover damages for alleged negligence, causing the death of Josiah H. Tolman, plaintiff's intestate.

The deceased was a farmer, living near Syracuse. The road from his home to that city crossed the tracks of defendant's road. On December 21, 1880, while going from said city to his home the sleigh in which he was riding was struck by an engine attached to a train on said road, and he was killed. At the close of plaintiff's evidence defendant's counsel moved for a nonsuit, on the ground that the evidence failed to show negligence on defendant's part, and it failed to show no contributory negligence. The motion was denied, and said counsel duly excepted.

The facts are sufficiently stated in the opinion.

*Louis Marshall* for appellant. The evidence on the question of the defendant's negligence was not sufficient to justify its submission to the jury as against the affirmative evidence of both the plaintiff's and defendant's witnesses that the statutory signals were given. (*Culhane* v. *N. Y. C. & H. R. R. R. Co.*, 60 N. Y. 133; *McKeefer* v. *Same*, 88 id. 667; *Davis* v. *N. Y. C. R. R. Co.*, 47 id. 402; *Chapman* v. *Same*, 14 Hun, 484; *Salter* v. *U. & B. R. R. Co.*, 59 id. 631.) The evidence, failing to show affirmatively that the plaintiff was not guilty of contributory negligence, omits proof which is an essential prerequisite of a recovery by the plaintiff. (*Wilds* v. *H. R. R. R. Co.*, 24 N. Y. 430; *Hale* v. *Smith*, 78 id. 480; *Reynolds* v. *N. Y. C. & H. R. R. R. Co.*, 58 id. 248; *Warner* v. *Same*, 44 id. 471; *Hart* v. *Hudson River Bridge Co.*, 84 id. 56; *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 75 id. 330; *Riceman* v. *Havemeyer*, 84 id. 647; *Glendenning* v. *Sharpe*, 22 Hun, 78; *Kinney* v. *N. Y. & M. B. R. R.*

*Co.*, 13 Weekly Dig. 61; *Miller* v. *N. Y. C. & H. R. R. R. Co.*, id. 145; *Becht* v. *Corbin*, 92 N. Y. 658.) Since it appeared that the plaintiff's intestate could have seen the train in time to avoid the accident, he must be presumed either to have seen it and to have rushed across the track in utter disregard of his own safety, or else to have failed to look and listen for the train. In either event he is equally guilty of contributory negligence. (*Wilds* v. *H. R. R. R. Co.*, 24 N. Y. 430; *Connolly* v. *N. Y. C. & H. R. R. R. Co.*, 38 id. 346; *Salter* v. *U. & B. R. R. Co.*, 75 id. 273.) The positive testimony of an unimpeached, uncontradicted witness cannot be disregarded by the court or jury arbitrarily or capriciously. (*Newton* v. *Pope*, 1 Cow. 109; *Lomer* v. *Meeker*, 25 N. Y. 361; *Robinson* v. *McManus*, 4 Lans. 387; *Satterthwaite* v. *Freeland*, 5 T. & C. 366; *Seibert* v. *E. Ry. Co.*, 49 Barb. 583; *Culhane* v. *N. Y. C. R. R. Co.*, 67 Barb. 562; *Elwood* v. *W. U. Tel. Co.*, 45 N. Y. 549; *Wohlfart* v. *Beckert*, 92 id. 490; *Kavanagh* v. *Wilson*, 70 id. 177; *Gildersleeve* v. *Landon*, 73 id. 609; *Koehler* v. *Adler*, 78 id. 287.) If a fog existed, which affected the ability of the deceased to see, his duty to exercise active vigilance increased. (*Chapman* v. *N. Y. C. R. R. Co.*, 14 Hun, 484; *Weber* v. *N. Y. C. R. R. Co.*, 58 N. Y. 451; *Grippen* v. *N. Y. C. R. R. Co.*, 40 id. 48.)

*T. K. Fuller* for respondent. The question of the defendant's negligence was properly submitted to the jury. (*Ernst* v. *H. R. R. R. Co.*, 35 N. Y. 9; *Renwick* v. *N. Y. C. & H. R. R. R. Co.*, 36 id. 132; *Smedis* v. *B. & R. B. R. R. Co.*, 88 id. 13, 19; 14 N. Y. Weekly Dig. 24; *Powell* v. *N. Y. C. & H. R. R. R. Co.*, 22 Hun, 56; *Roach* v. *Flushing, etc., R. R. Co.*, 58 N. Y. 626; *Salter* v. *U. & B. R. R. R. Co.*, 59 id. 631; *S. C.*, 88 id. 42; *McGrath* v. *N. Y. C. & H. R. R. R. Co.*, 63 id. 522; *Kellogg* v. *N. Y. & H. R. R. Co.*, 79 id. 72; *McKeever* v. *Same*, 88 id. 667; *Massoth* v. *D. & H. C. Co.*, 64 id. 524; *Shaw* v. *Jewett, Receiver, etc.*, 13 Weekly Dig. 80; *Putnam* v. *N. Y. C. & H. R. R. R. Co.*, 16 id. 114; *Voak* v. *Nor. Cen. R. R. Co.*, 75 N. Y. 320;

*Semel* v. *N. Y., N. H. & H. R. R. Co.*, 14 Weekly Dig. 24.) The absence of contributory negligence may be inferred as well from the circumstances of the case as from evidence directly establishing the fact. (Abb. Tr. Ev. 595.) The law imposes no impossibilities. There were no eye witnesses to this casualty and hence direct proof of due care is impossible. It must be inferred from all the circumstances surrounding the case which have been fully proved. (*Smedis* v. *B. & R. B. R. R. Co.*, 23 Hun, 279; affirmed, 88 N. Y. 13–19; 14 N. Y. Weekly Dig. 185; *Waldele* v. *N. Y. C. & H. R. R. R. Co.*, 19 Hun, 69; *Johnson* v. *Hudson R. R. R. Co.*, 20 N. Y. 65; *Hart* v. *H. R. Bridge Co.*, 80 id. 622; *Payne* v. *T. & B. R. R. Co.*, 83 id. 572; *Morrison* v. *N. Y. C. & H. R. R. R. Co.*, 63 id. 643; *Weber* v. *N. Y. C. & H. R. R. R. Co.*, 58 id. 451; *Massoth* v. *D. & H. C. Co.*, 64 id. 524; *Stackus* v. *N. Y. C. & H. R. R. R. Co.*, 79 id. 464; *Hawley* v. *N. Cent. R. R. Co.*, 17 Hun, 115; *Dyer* v. *E. Ry. Co.*, 71 N. Y. 228; *Jones* v. *N. Y. C. & H. R. R. R. Co.*, 28 Hun, 365.)

FINCH, J. A careful examination of the testimony given upon the trial leads us to the conclusion that upon the issue of defendant's negligence there was, perhaps, a question of fact for the jury. While the proof was extremely weak and its decided preponderance was against the plaintiff, it is difficult to say that there was none. It is not in the least doubtful that somewhere between the whistle post and the Jamesville crossing the bell of the engine was rung and the whistle sounded. That fact is established not merely by the evidence of the three persons on the engine who testify that they gave the signals, but by passengers on the train who heard them, one of whom was a witness for the plaintiff, and by two other persons who resided near the crossing. The fact is further and very conclusively corroborated by the circumstance that every one of the plaintiff's witnesses heard either the whistle, or the bell, or both. But the question when these signals were given; whether at the whistle post or at the crossing; whether before the accident or only at the moment of its occurrence, is left open to a pos-

sibility of doubt, and, it may be, cannot be determined as matter of law. The whistle post was distant from the crossing about a quarter of a mile, and as the train was running not less than thirty miles an hour it took but thirty seconds to run from the signal point to the crossing, and the conflicting theories depend upon what occurred within that brief interval. Several witnesses for the plaintiff testify that the sounding of the whistle and the application of the air-brake, which last confessedly occurred at the moment of the accident, were cotemporaneous, at the same instant, and without appreciable interval. While this evidence was largely matter of judgment, and extremely open to error or mistake, we cannot reject it wholly, and it is possible that it brought the issue within the province of the jury.

But upon the question of contributory negligence we disagree with the General Term. The burden was upon the plaintiff of showing affirmatively, either by direct evidence or the drift of surrounding circumstances, that the deceased was himself without fault, and approached the crossing with prudence and care, and with senses alert to the possibility of approaching danger. He must look and listen, and is excusable for the omission only when the circumstances show that both precautions were impossible or unavailing. There is no evidence, direct or inferential, of the exercise of such care and prudence by the deceased. He was familiar with the locality, and had often passed the crossing. The highway which he traveled from Syracuse approached the rails at a very acute angle, and for a thousand feet from such crossing gave an unobstructed view of the railroad. At the crossing, the track could be seen to the north for a distance of twenty-seven hundred feet, no obstacle intervening to bar the line of vision. The deceased left Syracuse after having indulged to some extent in the use of intoxicating liquor. One witness rode with him to the toll-gate and there left him, describing him as silent and dull. Some evidence indicates that he was awake at that point, but one of the men on the engine swears that as deceased approached the crossing his head was bent back upon

some object behind him in the sleigh.    This witness, it is said, was impeached by proof of contradictory statements.    But, excluding his evidence, it still remains apparent that the deceased, if awake and exercising his senses and the caution demanded by his situation, could have seen and might have avoided the train, unless the night was so dark that he could not see, and of such character and surroundings that the noise of an approaching train could not be heard.    The burden of establishing affirmatively freedom from contributory negligence may be successfully borne, though there were no eye-witnesses of the accident, and even although its precise cause and manner of occurrence are unknown.    If, in such case, the surrounding facts and circumstances reasonably indicate or tend to establish that the accident might have occurred without negligence of the deceased, that inference becomes possible, in addition to that which involves a careless or willful disregard of personal safety, and so a question of fact may arise to be solved by a jury and require a choice between possible, but divergent, inferences.    If, on the other hand, those facts and circumstances coupled with the occurrence of the accident do not indicate or tend to establish the existence of some cause or occasion of the latter which is consistent with the exercise of proper prudence and care, then the inference of negligence is the only one left to be drawn, and the burden resting upon the plaintiff is not successfully borne, and a nonsuit for that reason becomes inevitable.

In the present case, except for the darkness of the night, there was no obstacle to the vision of the deceased for a long distance from the crossing.    Neither houses, nor trees, nor inequalities of the land were obstacles to his sight for a distance from the crossing toward the approaching train of more than half a mile.    His horse appears to have been quiet and kind, and susceptible of easy control.    The approach to the crossing was quite bare of snow, naturally compelling a moderate speed of the sleigh.    Unless, therefore, the facts disclose that the darkness and the mist were such as to make it impossible to see the head-light of the engine at a distance adequate for suf-

ficient warning, it is a necessary inference that the deceased did not look, and that his death was the result of a blind or reckless movement upon the track, which ordinary care would have surely prevented. The very darkness made more necessary the duty of watchfulness, and if the deceased could have seen the lights of the train in season for safety the accident itself demonstrates that he did not look, or that if he did, he ventured upon a hazardous effort to cross in spite of the danger. Now the evidence establishes, without the least contradiction, that to one approaching the crossing and looking to the west along the railroad, the head-light of the engine and the lights of the cars were visible for a distance great enough to give adequate warning. One of the plaintiff's own witnesses, upon the accuracy of whose observation and the truth of whose statement the plaintiff depended as showing that the train was at the crossing when the whistle sounded, clearly establishes the fact. He lived south and east of the crossing, at a distance of one thousand and forty feet therefrom. He sat in a west room of his house, the outlook being toward the crossing, and his line of vision forming an acute angle with the track at that point, his house being three hundred and sixty-nine feet in a direct line from the rails. He sat by the window, and hearing a whistle, looked out, shading his eyes from the light of his room, and saw the lights of the train, and was able to locate it as at or just south of the crossing. Another of plaintiff's witnesses came to the depot soon after the accident, and noticed a train going north, and saw it near the water-tank. He added: "The train must have been sixty to eighty rods away then, I should think; there was no difficulty in my seeing it until after it passed the bend in the road; there was nothing in the character of the atmosphere that night which prevented my seeing the train sixty rods; I saw the lights on the hind end of it." Still another of plaintiff's witnesses, walking upon the track with his back to an approaching train, neither looking nor listening, and giving no heed to the possibility of danger, was startled by seeing the glow of the head-light in front of him in time to take the alarm and

escape the danger. He thinks the train was eight or ten rods off when he became conscious of the light. If he saw it at that distance shining from behind his back, it is not at all doubtful that, looking toward the head-light, it would have been visible at a very much greater distance. All the rest of plaintiff's witnesses, however they emphasize the darkness, admit their ability to have seen lights at varying distances. The lights of the houses as the train left the city, and the lanterns of the trainmen as they moved about the scene of the accident, were all visible. On the part of the defendant, one witness, passing soon after the accident, could see the lights of the houses and discern the fences and trees, and found his way without difficulty, though his horse was blind. Two others, one stationed over two hundred feet and the other about four hundred feet from the crossing, were able, through their windows and under that disadvantage, to see the lights of the cars and so observe the passage of the train. Other witnesses found no difficulty in going to their homes, and noticed that objects at the roadside and lights in the houses were visible as they passed along. On this state of facts it is impossible to doubt that deceased might have seen the approaching train if he had looked for it, as a prudent man should. The facts leave the occurrence explainable as to its cause and occasion, only by the theory of negligence on the part of deceased. They indicate no way in which the accident might have happened, suggest no adequate cause which could or might have operated, which way or cause showed freedom from fault on the part of deceased, and could have produced the result in spite of his care and prudence. The evidence leaves no rational ground for any other inference than one of neglect and want of care.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur, except RUGER, Ch. J., not sitting, and DANFORTH, J., absent.

Judgment reversed.