### RIORDAN *v.* OCEAN STEAM-SHIP CO.

*(Common Pleas of New York City and County, General Term.  June 16, 1890.)*

NEGLIGENCE—INSTRUCTIONS—CONTRIBUTORY NEGLIGENCE.

Plaintiff's intestate, engaged in loading defendant's steamer, got upon one of the freight elevators to ascend from the hold to dinner, and was caught between it and

·the hatchway. The elevator was in good condition, well lighted, and large enough for the persons on it to stand without danger of being caught. In an action to recover for the death the court charged: "That if deceased was rightfully on the elevator at the time of the injury, in the absence of the testimony of an eye-witness of the accident, the jury might assume that he received his injury in the performance of his duty, and had not omitted the precautions which a prudent man would take in the presence of known danger." *Held* prejudicial error, as there could be no recovery until it was shown that deceased was free from negligence.

Appeal from trial term.

Action by Margaret Riordan against the Ocean Steam-Ship Company. There was a verdict for plaintiff. From the judgment entered thereon defendant appeals.

Argued before LARREMORE, C. J., and BOOKSTAVER, J.

*Nathan Bijur,* for appellant. *Stoddart & Hart,* (*George William Hart, Jr.*, of counsel,) for respondent.

BOOKSTAVER, J. The action was brought by the plaintiff as administratrix of Michael Riordan, who was killed on the 31st of January, 1888, while in the employment of the defendant. On that day the steamer Chattahoochee was lying at her dock in this city. On her were two companion elevators, used in loading and unloading freight. They were worked by means of a winch between the hatches and about six feet distant therefrom. The driver of the winch could not look into the bottom of the hold when at his proper station, and there was no one placed at the hatch to do so. The winch was set in motion and stopped by a lever. To start or stop the machinery the driver had merely to push or pull the lever, which took but a moment, and as one elevator went up the other would go down. On the day the deceased met with the accident causing his death, he was engaged with three other men in the hold of the vessel. It was the duty of one of these, named Martin, to take the freight off the elevator as it came down, and the others, including Riordan, tiered it up in the hold. Riordan had been in defendant's employment for several months before this time, and engaged in similar work. Martin was the only man whose duty it was to go on the elevator, and he gave the word to the man who operated the winch when to raise and lower it. About noon, soon after the elevator had descended with a load of freight, a call for dinner was given, and all four of the men in the hold, without waiting to unload the freight, climbed on the top of it, and gave the word to hoist. The man at the winch tried to do so, but could not on account of the weight. The men below then took off all the freight but two barrels, and Riordan, with others, cried out to the man at the winch to go ahead. It also appears from the testimony that the elevator was about seven feet in length and from four to five in width, and there was much more than sufficient room for all of the persons on it to stand without danger of being caught. There was a lantern, with a reflector about a foot and a half by fourteen inches, in the wing abreast of the elevator, throwing light directly upon it; and there were also two lights in the hands of Martin. The next thing known of Riordan after the elevator started, was that he was caught between it and the combing of the hatch. At once the others called out "Stop, there is some one caught." The winch was instantly stopped, the driver being at it when the word was given. The elevator was coming up slowly at the time; and all the witnesses who testified on the subject said that the winch and all the appliances were in perfect condition at the time of the accident. When Riordan was brought up, it was discovered that he was seriously injured, and he shortly thereafter died from the effects.

At the close of the plaintiff's case the defendant moved for a dismissal of the complaint on the ground that the evidence did not establish negligence on the defendant's part, nor the absence of it on the part of the deceased, which was denied. The motion was subsequently renewed at the close of the case

and again denied; and upon the plaintiff's request the court charged: "That if the deceased was rightfully on the elevator at the time of his injury, in the absence of the testimony of an eye-witness of the accident, the jury might assume that he received his injury in the performance of his duty, and had not omitted the precautions which a prudent man would take in the presence of known danger." This, we think, was error, for it is as necessary for the plaintiff to show that the injured party was free from negligence, or to prove facts and circumstances from which it could be fairly inferred, as it is to show that the defendant was guilty of negligence. In *Bond* v. *Smith*, 113 N. Y. 378, 21 N. E. Rep. 128, the court says, in speaking of this question: "We have no right to guess that he [the deceased] was free from fault;- it was incumbent upon the plaintiff to show it by a preponderance of evidence. She furnished the jury with nothing from which they could infer the freedom of the intestate from fault. She simply furnished them food for speculation, and that will not do for the basis of a verdict. The law demands proof and not mere surmises." In *Tolman* v. *Railroad Co.*, 98 N. Y. 198, the court says on the same question: "If those facts and circumstances, coupled with the occurrence of the accident, do not indicate or tend to establish the existence of some cause or occasion of the latter which is consistent with the exercise of proper prudence and care, then the inference of negligence is the only one left to be drawn, and the burden resting upon the plaintiff is not successfully borne, and a nonsuit for that reason becomes inevitable." Now, in this case we fail to see any evidence from which the jury could have fairly inferred that the deceased acted with proper prudence and was free from negligence. He had abundance of light to see where he stood. He selected his own place. He, with others, gave the word for the elevator to start. There was plenty of room for him to stand in safety upon the elevator, and, if not, he, together with others, had left two barrels upon it, and if they in any way tended to cause the injury it was his own fault in leaving them where they were. There was no fault on the part of the defendant in hoisting. The elevator went at the ordinary speed, and the apparatus was entirely safe, and, as far as the testimony shows, in no way contributed to the injury. Indeed, the counsel for the plaintiff appears to have felt this weakness in his case, for on the trial he requested the court to charge that the jury might assume that the deceased had not omitted the precautions which a prudent man would take in the presence of danger; thus practically admitting that the evidence to show this was very slight. And we think the court erred in charging that request, for in *Cordell* v. *Railroad Co.*, 75 N. Y. 330, the court says: "Where the circumstances point just as much to the negligence of the deceased as to its absence, or point in neither direction, the plaintiff should be nonsuited. The presumption that every person will take care of himself from regard to his own life and safety cannot take the place of proof, because human experience shows that persons exposed to danger will frequently forego the ordinary precautions of safety."

It is insisted that the defendant was guilty of negligence in that it had no one at the hatch to see that the elevator was free and the men in proper position; and it is claimed that this precaution was taken upon other vessels. But it was shown by the defendant that other lines than theirs operated the elevators in the same way they did, and had no watchman at the hatch; and in fact the man at the hatch was placed there more for the purpose of expediting the loading and unloading of freight than to look after the laborers. In the view we take of this case, it is unnecessary to consider the question of the defendant's negligence, as there can be no recovery until it is shown that the deceased was free from it. It may be remarked, however, that, while a master is bound to furnish a safe and proper place for his servants to prosecute his labor in, and to adopt all reasonable means applicable for their safety, and employ skillful and competent workmen to direct his labor and as-

sist in its performance, we do not think the law has gone so far as to require him to furnish a watchman to look after the servant to see that with a safe appliance he does not put himself in a place of danger. And in this case the appliances were safe, and it is clear the accident did not occur through any defect in the machinery, or that the hold or the elevator was dangerous; it was only his position upon the latter that rendered the accident possible. The judgment, therefore, should be reversed, and a new trial ordered.