### HAYWOOD *v.* NEW YORK CENT. & H. R. R. Co.

(*Supreme Court, General Term, Third Department.* February 4, 1891.)

1. RAILROAD COMPANIES—ACCIDENTS AT CROSSINGS—GATES.

The duty of operating the gates at a railroad crossing in such a manner as to afford reasonable protection to a traveler upon the highway, who is reasonably careful himself, rests with the railroad company; and when the gate is open, and the

traveler passes through upon the track and is injured, it is a question for the jury whether allowing the gate to be open, even if opened by a stranger, is negligence on the part of the company.

2. SAME—CONTRIBUTORY NEGLIGENCE.
   A traveler on a public street, after passing through such a gate at a railroad crossing, was struck by a passing train and killed. It appeared that, while the gate through which he passed was open, the opposite gate was closed, the gates being operated by the same gateman, but by different cranks or levers; and that the street was 143 feet wide. *Held* that, on the question of contributory negligence of deceased, it was for the jury to determine whether he might not prudently have regarded the fact that the gate was open as an assurance that, while it was in that position, no train would pass across or upon the street; and whether he had not reasonable grounds for supposing that the opposite gate would be opened when reached by him.

3. SAME.
   The brakeman on the rear car of the passing train saw deceased approaching, and signaled him to stop, but there were intervening box-cars, and deceased was seated in a covered wagon, and there was no positive evidence that he could see the brakeman or any portion of the train. *Held*, that it was a question for the jury whether these facts established contributory negligence on the part of the deceased.

4. SAME—RATE OF SPEED—RESTRICTIONS.
   The ordinance of the common council of a city, providing that trains shall not be run across any of the streets in the compact part of the city at a greater speed than two miles per hour, nor without sending a person in advance of the trains to give warning, is not inconsistent with Laws N. Y. 1889, c. 242, providing that in cities of less than 50,000 inhabitants it shall not be lawful for the common council to restrict the rate of speed of railroad cars to less than 30 miles per hour, when gates are established, and persons furnished to attend the same, where there is no proof that such city has less than 50,000 inhabitants.

Appeal from circuit court, Schenectady county.

Action by John W. Haywood, as administrator of Arthur M. Haywood, deceased, against the New York Central & Hudson River Railroad Company. The action was prosecuted for alleged negligence of the defendant in the management of its railroad, by reason of which plaintiff alleges that his intestate was struck by defendant's cars while crossing the defendant's railroad track on one of the streets in the city of Schenectady. The deceased was a son of the plaintiff, and of about 16 years of age, and at the time of his death was in plaintiff's employ in the business of peddling and delivering milk in the city of Schenectady with a team of horses attached to a covered wagon, open at the front, with a seat located about the middle of the box, opposite which on either side was an opening in the cover of about two and one-half feet in width, with milk cans before and behind the seat. The defendant's railroad track crosses Front street in the city of Schenectady at about right angles with the street, and on a grade with the same, and at that crossing the street has six tracks crossing the street, and occupying a space on the street of 143 feet. The street at that point is 45 feet in width, and on either side of the railroad at this point the defendant some time prior to the accident had maintained gates, constructed and operated in the usual manner of such gates, with long arms of wood moving vertically on axles in boxes on the side of the street, and so adjusted that a gateman stationed at one of these boxes or axles, with the use of a crank or cranks, without shifting his position, could lower the bars on either side of the railroad track to a horizontal position, and thus span the entire street at either side of the railroad, or, by the use of the same cranks or lever, elevate the bars on either side or both sides of the railroad, and thus leave the street unobstructed for the public travel. The gates could also be raised by lifting directly upon the bars. The defendant, through its gateman and its flagman, had control of these gates at the time of the accident, but the undisputed evidence is that the gate through which the plaintiff's intestate entered upon the track had been raised by a woman, who lifted the bar, and passed through just before he drove through, and that the gates on the opposite side of the railroad tracks were closed when he drove in, and

were not opened before the accident. The direction of the railroad at that point is north and south, and the deceased approached the crossing from the east side, going in a westerly direction. About 18 feet from the east gate, through which the deceased passed, is a track diverging from the line of the main track, and leading in a curved line to the freight-house. From this freight track to track designated as "Track No. 4" is a distance on the line of the street of 53 feet. There are 5 tracks at this point, nearly parallel, and distant 7 feet from each other; each track being $5\frac{1}{2}$ feet wide, and designated in their order, from east to west, as Nos. 4, 3, 2, 1, and a switch track. On No. 4, which was the most easterly of the main tracks, stood a train of 12 high box-cars extending 2 feet north of the south building line of the street. On the occasion of the accident the deceased was on Front street, driving westerly towards the crossing on a trot. As he approached the east gate it was raised, as the evidence shows, by a woman, who was passing along the street. The west gate remained closed. As the deceased, with his team, passed under the gate upon the railroad track, a train of six box-cars backed from the south over track No. 3, colliding with the wagon in which the deceased was passing, and he was killed. There was a brakeman on the car that struck deceased, who gave alarm by swinging his hands and shouting, and the bell of the engine which was pushing the box-cars was rung. On reaching track 3 deceased turned his horses, and one of them stumbled, causing slight delay. The plaintiff insists that the defendant was guilty of negligence in allowing the gate to be opened so that the deceased could drive upon the track while a train was approaching, and also that the train was moving at a rate of speed that was prohibited by a city ordinance, and also in backing a train across the street without its being preceded by a flagman; and that the evidence of defendant's negligence was sufficient to justify the jury in finding a verdict for the plaintiff; and that, as the gate was raised, the deceased had a right to assume that no train was passing; that the third track was hidden from view at the point where the deceased passed the gate by intervening freight-cars; that he could not see the approaching train, and was therefore guilty of no contributory negligence. On the part of the defendant it is insisted that the gate was raised, through which the deceased passed, by a stranger, for whose acts the defendant is not responsible; that the opposite gate being closed was a notice to the deceased that the track was not clear; that he could have seen the approaching train if he had looked; that he must have seen the train approaching after he passed the gate, and in time to stop his team, but attempted to pass, with a knowledge of the approach of the train, with the hope or expectation of passing before the train reached him, but was unexpectedly delayed by the stumbling of his team; and that his acts and omissions constituted negligence on his part, which contributed to the injury, for which the plaintiff should have been nonsuited on defendant's motion. The defendant also insisted that the judge erred in his charge and in his rulings in the admission of evidence. The jury rendered a verdict for the plaintiff. Defendant appeals from the judgment for plaintiff entered on the verdict, and from an order denying a motion for a new trial.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*S. W. Jackson,* for appellant. *Edward D. Cutler,* (*Alonzo P. Strong,* of counsel,) for respondent.

MAYHAM, J. We think the evidence in this case fairly presented a question of fact for the jury as to whether the defendant was guilty of negligence in the management of the gate, or in running the train which produced the injury to the plaintiff's intestate. The defendant having constructed and maintained gates on either side of this railroad crossing the street, and, as the case shows, having charge of such gates, the public have a right to rely with some degree of confidence that it will so operate the same that the traveler

upon the highway will be excluded from the railroad tracks when trains are approaching in dangerous proximity to the street; and while such traveler may not rashly or presumptively rely upon the condition of the gates, but must, to avoid the imputation of contributory negligence, make use of his judgment and senses to avoid danger, yet when he finds the gate open, and drives upon the track, and is injured, it becomes the question of fact for the jury to determine whether the railroad company was guilty of negligence in allowing the gate to be opened by a stranger, and the traveler upon the highway thus put off his guard, or invited by the appearance to enter, and thus expose himself to danger. Negligence in the management of the gates may consist as well in allowing a stranger to open them, as in the negligent opening of them by the company's agent; and I think it is for the jury to say whether, upon the evidence in this case, the defendant negligently permitted the gates, which were placed there as a warning and safeguard to the public, to be opened either by its own employe or a stranger, and remain open so as to allow a traveler to pass through. The duty of operating the gates in such a manner as to afford reasonable protection to a traveler upon the highway, who is reasonably careful himself, rests with the railroad company; and when the gate is open, and the traveler passes through upon the track, and is injured, it is a question of fact for the jury to determine whether or not the act of allowing the gate to be open—whether opened by defendant or a stranger—is negligence on the part of the company. It is quite true, as contended by the appellant, that "unless there is something in the proof, taken as a whole, which, if believed by the jury, would establish a failure on the defendant's part to perform a legal duty, or to use reasonable care and prudence in what it did, the case should not be submitted to the jury." *Heaney* v. *Railroad Co.,* 112 N. Y. 126, 19 N. E. Rep. 422. But I think it cannot be held as a matter of law that permitting the gate to be opened even by a stranger, and to remain open long enough for a traveler upon the highway to pass through, is not such an act or omission by the company as to justify its submission to the jury upon the question of the negligence of the defendant. In *Grippen* v. *Railroad Co.,* 40 N. Y. 47, the court, in discussing the question of evidence of negligence to be submitted to the jury, says: "Where the facts are themselves in dispute, or upon the proof their wisdom or efficiency is doubtful, the jury must decide whether negligence was proved." The gate being under the charge, superintendence, and management of the defendant, we think it was for the jury to say whether leaving it open in the manner indicated by the witness was or was not negligence. It is quite true, as contended by the appellant, that the burden is upon the plaintiff, in this class of cases, to establish the negligence of the defendant, which either directly or proximately caused or contributed to the injury complained of, and that the charge of negligence cannot be supported by mere conjecture or surmise, but must be proved, either by direct evidence or by facts from which the inference of negligence can be legitimately drawn, (*Dobbins* v. *Brown,* 119 N. Y. 193, 23 N. E. Re. 537;) and that this class of actions stands upon a different footing from that governing actions by passengers against carriers of passengers or owners of goods against common carriers, in which cases a contractile relation exists, which is deemed broken by an injury or loss to the person, or owner of the goods carried. *Nitro-Glycerine Case,* 15 Wall. 536. In this case, as we have seen, negligence must be proved by the plaintiff by evidence of negligent acts or omissions; in the other, proof of the injury usually established a *prima facie* case.

But the appellant insists that the trial judge should have nonsuited the plaintiff on the motion of the defendant, on the ground that the plaintiff's intestate was guilty of contributory negligence in driving upon the railroad track while the opposite gate was closed, and in not looking to the right and left, as he was required to do, in going upon such dangerous ground

as a railroad crossing; and insists that if he had looked he could have seen the approaching train in time to have avoided the collision.    Upon this question also the plaintiff has the affirmative, and·must assume the burden of proving to the satisfaction of the jury, by evidence tending to establish that fact, that his intestate was guilty of no negligence which contributed to the injury; and the rule upon this subject is well stated in *Tolman* v. *Railroad Co.*, 98 N. Y. 202, as follows: "The burden is upon the plaintiff of showing affirmatively, either by direct evidence or by the drift of surrounding circumstances, that the deceased was himself without fault, and approached the crossing with prudence and care, and with senses alert to the possibility of approaching danger.    He must look and listen, and is excusable for the omission only when the circumstances show that both precautions were impossible or unavailing."    Upon this branch of the case we think it was proper for the jury to consider the fact that deceased found this gate open, and to consider that as an element bearing upon the question of his negligence; and the discussion of that question upon the other branch of the case applies with equal force here.    The jury might well consider whether, when deceased found the gate open, he might not prudently have regarded it as some degree of assurance that no train, while the gate was in that position, would pass across or upon the limits of the public street.    In *Palmer* v. *Railroad Co.*, 112 N. Y. 234, 19 N. E. Rep. 678,—a case in some respects similar to this,— the company had provided a gate on either side of the track, to be shut when engines or trains were passing, and opened at other times.    Plaintiff's intestate, finding the gate open, attempted to cross, and was struck by a locomotive, and killed. `DANFORTH, J., in delivering the opinion of the court of appeals affirming the judgment of the general term sustaining a verdict for the plaintiff, uses this language: "The defendant, for the better protection of life, and to promote the safer and better management of its road, either of its own volition or under the command of law, (Laws 1884, c. 439, § 3,) had erected gates across Walnut street on either side of the track, and had stationed a person there to open or close such gates when an engine or train passed.    The duty of the company was imperative; and it is obvious that an open gate was a direct and explicit assurance to the traveler that neither train nor engine was rendering the way dangerous; that none was passing.    A closed gate was an obstruction preventing access to the road; an open gate was equally positive in the implication to be derived from it that the way was safe;" and he adds: "The open gate was an affirmative and explicit declaration and representation that neither train nor locomotive was approaching with intent to pass."    With this declaration of the law from the highest court, it would seem clearly proper to submit it as a question of fact to the jury, whether, from all the evidence, the deceased was chargeable with contributory negligence.

It is urged by the appellant that the brakeman on the rear car, as the train was backed towards the street, was first to reach the street, saw deceased as he approached the track, and signaled him to stop; but the evidence shows also that there were intervening box-cars, and, while the person standing upon the approaching car could see deceased and his wagon, yet there is no positive evidence that deceased, seated as he was in his covered carriage, could see any portion of the approaching train.    At least the question was involved in so much doubt upon that subject that we think it presented a proper one for the jury.    It is also urged by the appellant that the fact that the opposite gate was closed was notice to the deceased that the way was obstructed; but, when taken in connection with the fact that the street at this point was 143 feet wide, and that the gates, although operated by the same gateman, were moved by different cranks or levers, it was for the jury to say whether the deceased had not reasonable grounds for supposing that the opposite gate would be opened when reached by him.    On the whole, we think

the facts justified the submission of the question of contributory negligence to the jury as one of fact. The jury in this case having found in favor of the plaintiff upon both the questions of defendant's negligence and the plaintiff's want of contributory negligence upon evidence on which they might so find, the judgment upon their verdict must be sustained, unless some error in the admission or rejection of evidence, or in charging the jury, was committed by the trial judge.

It is urged by the appellant that the ordinance of the common council of the city of Schenectady, prescribing rules and regulations for running cars across any of the streets in the city of Schenectady, was improperly offered and received in evidence on the trial. Section 10, tit. 3, c. 385, Laws 1862, confers upon the common council of cities the power to regulate the speed of railroad cars upon railroads within their respective cities, and make various other rules in reference to the operations of railroads in the same. Under this power the common council of Schenectady, on the 12th of January, 1883, adopted the following ordinance: "It shall not be lawful for any railroad corporation, its agents, servants, or employes, or any person or persons in charge of a train, caboose, or cars, to cause the same to be drawn, kicked, or backed over or across any of the streets of the city of Schenectady within the compact part of the city, unless they shall cause a person of mature and suitable age to pass in advance of said train or caboose, so moving and backing within the compact part of said city referred to, for the purpose of giving warning to persons of the approach of such cars or caboose; and such cars, when so moving backwards, shall not be moved or backed at a greater rate of speed than two miles an hour." The introduction of this ordinance was objected to on the ground that it was inconsistent with the provisions of chapter 242, Laws 1889. This provides that in cities of less than 50,000 population it shall not be lawful for the common council to restrict the rate of speed of railroad cars to less than 30 miles an hour when gates are established, and persons furnished to attend the same. It will be seen that the restriction in terms applies only to cities of 50,000 or upward, but there is no proof that Schenectady is a city of less than 50,000 inhabitants, nor was the objection specifically put on the ground that its population was less than that number; and we fail to see that the introduction of this ordinance was an error for which the judgment should be reversed. Besides, this act was not in force when the injury was done. Several exceptions were taken to the charge of the learned judge, and to his refusals to charge in the case; but we have carefully examined them and the authorities cited by the learned counsel, and find in them no grounds of error for which this judgment should be reversed. The judgment should be affirmed, with costs.

All concur.