tory law, are questions which are not presented for decision by the record now before the court, and, therefore, I refrain, and think the court should refrain, from expressing any opinion thereon.

=====

GALLAGHER v. NEW YORK CITY RY. CO.

(Supreme Court, Appellate Division, First Department.    March 20, 1908.)

1. DEATH—ACTIONS—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.

While the rule placing the burden of proving freedom from contributory negligence in death actions upon the plaintiff has been somewhat relaxed as to the amount and kind of proof required, especially where there are no eyewitnesses, it has not been abrogated in such cases, and it applies in the case of children as well as adults.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Death, § 78.]

2. SAME.

Evidence *held* insufficient to sustain the burden of proving that plaintiff's intestate was free from negligence in going upon a street car track, notwithstanding the relaxation of the rule as to the amount and kind of proof necessary in death actions.

Appeal from Trial Term.

Action by Katherine P. Gallagher, administratrix of the estate of George Gallagher, against the New York City Railway Company, for the death of plaintiff's intestate, a minor son. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

James L. Quackenbush (Bayard H. Ames, of counsel), for appellant.
Bullowa & O'Connell (John J. O'Connell, of counsel), for respondent.

CLARKE, J.    This is an appeal from a judgment for $5,163.50 entered upon a verdict and from an order denying a new trial, in an administratrix's action to recover for the death of her son, 11 years, 11 months, and 5 days old, who was killed about half past 4 o'clock on March 13, 1905, between 121st and 122d streets, on Madison avenue, by a north-bound Madison avenue car. At the locus in quo Madison avenue lies east of Mt. Morris Park, which extends from 120th street to 124th street. One Hundred and Twenty-First, One Hundred and Twenty-Second, and One Hundred and Twenty-Third streets are interrupted by the park. There is an entrance to the park at 122d street.

The sole witness of the accident produced by the plaintiff was a boy of 13, Lawrence Levy, who testified that:

"I was at the southeast corner of 121st street and Madison avenue. I was looking for the fellows playing deers over in the park. * * * We were playing deers. I was looking directly west. * * * I saw George [the decedent] coming from the direction of park to Madison avenue. I first saw him on the walk at 121st street, southeast corner. * * * I was still looking west, looking for the boys who were playing with me. He went diagonally towards the entrance of the park at 122d street. * * *

"Q. Now, at the time that he left the southeast corner of Madison avenue and 121st street, did you see any car in sight? A. No, sir. * * *

"Q. Did he walk fast or slowly? A. Ordinary.

"Q. You were looking straight across where the boys were playing? A. Yes, sir. I saw him walk across in the mud gutter towards the park. * * * I was looking towards the fellows, and then when he was by the crosswalk, in the middle of the crosswalk of 121st street, the car was about five feet back of him.

"Q. You saw the car coming along back of him? A. Yes, sir. The motorman didn't ring his bell. I saw the car coming along first. It was going north as fast as lightning. It got about five feet in front of the boy, and the motorman hollered to get off the track. George at this time was right about in the middle of the car track. The car hit him up in the air. His hat fell off and fell on the platform. He nearly went on the platform, and he fell under. The motorman, as I saw him, didn't do nothing. * * * He went under this car, and he got dragged to the tree. That tree was right at the end of the first private house above the church."

According to this boy's testimony, it was about 90 feet from where George was struck to where the car stopped.

Under cross-examination he said that he had known George about a year; that George had spoken to him at the corner, and then walked in a diagonal direction toward the 122d street entrance of Mt. Morris Park; that he was not playing any games on the day of the accident as far as he knew.

"I waited on that same corner from the time I spoke to the little Gallagher boy up to the time he was struck. I say that the car came along and was going rapidly. * * * The noise there in the street at that time was some boys playing on the block that weren't playing in the game. The boys were shouting and screaming and all that sort of thing and making noise in that way. They were playing in the street. * * * They were down at 121st street, down by the private houses a little past the church, a little to the north of the church on the northeast corner of 121st street and Madison avenue. * * * When I saw him struck, I was on the southeast corner of 121st street, and he was on the northeast corner. I say I heard the motorman shout at the boy."

The testimony on behalf of the defendant given by the conductor, Rouder, a man named Keyser, and two women who were on the street, tended to show that the boy was struck about the middle of the front of the church, and that the car was stopped in from 15 to 20 feet. Keyser testified that the boy was engaged in playing ball and ran backward in front of the car, and that, when he reached the easterly rail of the north-bound track, the car was about 15 feet from him. The car was going at a usual or moderate rate of speed. The motorman put on his brake, rang the bell, leaned forward, and tried to get the boy, and caught his cap. The two women said that the car was six or eight feet from him when he got on the track. There seems to be no doubt that the motorman shouted to the boy. That is agreed to on both sides.

Careful examination of this record fails to disclose even a scintilla of evidence that the decedent exercised the slightest care, took any precaution whatever to insure his own safety. He was a resident of the neighborhood, nearly 12 years of age, accustomed to take care of himself, go to school and play in the streets, bright, with good eyesight and perfect hearing. He knew that car tracks were in the street over which electric cars frequently passed. The avenue was

straight. It was in the daytime. There were no vehicles or obstructions in the street, as testified to by the plaintiff's witness. After talking with this boy friend upon the corner, he started in a diagonal direction across the street for the entrance of the park at 122d street. There is no evidence that before he left the sidewalk, or while he was in the roadway, or before he stepped upon the track, that he looked to see whether any car was approaching, nor is there any evidence of where the car was when he left the sidewalk. According to Levy the car was five feet from him when he got on the track. According to Keyser the car was 15 feet from him when he got on the track. According to Mrs. Valentine the car was six or eight feet from him when he got on the track, and according to her daughter about six feet from him, and the evidence establishes that the motorman shouted at him, attempted to stop the car, tried to catch him, and draw him on board, but only succeeded in catching his cap. So that there is no contradiction in the evidence that the boy, in full possession of all his senses, with an unobstructed street, and in the daytime, stepped in front of a moving car which at that time was a very few feet distant from him. This fact, taken in connection with the entire absence of evidence as to any precaution upon his part, renders it clear, as it seems to us, that the plaintiff has not only failed to establish want of contributory negligence on the part of the decedent, but to show that this deplorable accident was the result of the boy's own heedlessness.

The respondent urges that in a death case it is not essential that the plaintiff, in order to recover, must give direct evidence of an eyewitness that the decedent stopped, looked and listened before going on the track. He cites Tolman v. Syracuse, Binghamton & New York Railroad Co., 98 N. Y. 198, 50 Am. Rep. 649. It is true that in that case the court said:

"The burden of establishing affirmatively freedom from contributory negligence may be successfully borne, though there were no eyewitnesses of the accident, and even though its precise cause and manner of occurrence are unknown."

But the same case says:

"The facts leave the occurrence explainable as to its cause and occasion only by the theory of negligence on the part of the deceased. They indicate no way in which the accident might have happened, suggest no adequate cause which could or might have operated, which way or cause showed freedom from fault on the part of the deceased, and could have produced the result in spite of his care and prudence. The evidence leaves no rational ground for any other inference but one of neglect and want of care."

He also cites Monck v. Brooklyn Heights R. R. Co., 97 App. Div. 447, 90 N. Y. Supp. 818. In that case it was said:

"The rule as applicable to such facts as are disclosed by the record in this case may be generally stated to be that the failure of proof that a pedestrian crossing the tracks of a street surface railroad upon the public streets of a village or city looked to observe the approach of a street car does not establish contributory negligence per se where the approaching car is at such a distance that, had he in fact looked, he would have been warranted in assuming personal safety in crossing."

The difficulty in applying that rule to the facts of this case is that there is no evidence tending to show where the approaching car was

at the time he started to cross the street, and so that it was at such a distance that had he in fact looked he would have been warranted in assuming personal safety in crossing.

In Baxter v. Auburn & Syracuse Railway Co., 190 N. Y. 439, 83 N. E. 469, a death case, the court said:

"When, by reason of the death of the injured person, his mouth is closed, the burden nevertheless remains upon the complainant, upon whom the cause of action had devolved, to show affirmatively by direct evidence, or from surrounding circumstances, that the deceased was without fault. * * * In this case there was direct testimony upon which the plaintiff relied to show how the accident occurred; but it failed to establish, or to suggest, that the deceased exercised that care or prudence in conduct which was necessary upon the occasion. Indeed, the testimony of the eyewitnesses and the circumstances disclosed by the evidence preclude a reasonable inference that he was mindful of the situation."

In that case the evidence was that the decedent had looked and for a distance of 600 feet no car was in sight. The decedent had to go a distance of 35 feet. Judge Grey, speaking for an unanimous court, said:

"The deceased, however, does not appear to have looked again in the direction from which a car might be expected after he started with his horses to cross the track. * * * A street surface railway track may not be as much a place of danger as is a steam railway track; but nevertheless its presence in the street admonishes a person to be reasonably vigilant when attempting to cross. It behooved the deceased, before going upon it, to use his senses, and to look and to listen. He was to decide if it was reasonably prudent at the moment to cross it. The omission to look would only be excusable in a situation where that precaution was shown by the circumstances to have been an unavailable one. However excessive the speed of the car, it is plain that had the deceased looked again, after leaving the sidewalk, he would have seen it, and might have awaited its passage. It was culpable negligence as matter of law in my opinion for him to drive across the car track, between street crossings as he was, without looking to see if a car was approaching at a point where it could have been seen for several hundred feet. That was the evidence, and I think it showed an inexcusable neglect on the part of deceased, which contributed directly to his injury, as the proximate cause thereof."

In Perez v. Sandrowitz, 180 N. Y. 397, 73 N. E. 228, a death case, where the decedent was a boy 13 years of age, the court held that the case should not have been submitted to the jury because of the failure to prove want of contributory negligence, saying:

"The evidence utterly fails to show, directly or inferentially, that the deceased used that degree of care which was incumbent upon him under the circumstances. He was a bright, healthy lad of 13 years of age, and, while he had a right to cross the street between the crossings, he was bound to use that reasonable degree of care which the circumstances suggested. There is not one fact in evidence to show that he used any care; nor do the facts proven permit of the slightest inference that any care was exercised."

In that case, as in this, there was no claim that the decedent was incapable of caring for himself. There was no vehicle or obstruction in the street at the time which would have prevented him from seeing the approaching wagon. What he was doing, whether he was playing or accomplishing some more serious purpose, was not certain from the evidence, and the Court of Appeals reversed a judgment of the Appellate Division affirming the judgment entered upon the verdict. These few cases have been cited for the purpose of showing that, while the

rule that the plaintiff must bear the burden of showing a want of contributory negligence in death cases has been somewhat relaxed with regard to the amount and kind of proof required, and especially where there are no eyewitnesses of the accident, yet it has not been abrogated in such cases, and that it applies in the case of children as well as adults. In the case at bar we have four eyewitnesses of the accident, and whether the deceased was going diagonally across the street to the 122d street entrance to the park, or whether he was playing ball with the boys who, even according to the plaintiff's witness, were engaged in that game in the street, yet all of the witnesses agree that he got upon the track from 5 to 15 feet in front of the car, and that the motorman shouted to him and exerted himself to save him. There is no direct evidence, and, as we view it, no inferential evidence, of any care for his own safety exercised by the boy himself. Therefore, within the well-settled rule, the plaintiff did not sustain the burden put upon her by the law.

The judgment and order appealed from should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.