GOLDBERG v. HERMAN et al.

(Supreme Court, Appellate Division, First Department. February 4, 1910.)

MASTER AND SERVANT (§ 281*)—CONTRIBUTORY NEGLIGENCE—SUFFICIENCY OF EVIDENCE.

Where a boy in charge of a freight elevator, while working on top of it, was in some manner crushed to death, and the evidence showed that the elevator machinery was in good working order, so that his death may have been caused by his acts in managing it, his freedom from contributory negligence cannot be inferred from the nature of the accident, without some evidence tending to show that he was not killed by his own negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 987–996; Dec. Dig. § 281.*]

Appeal from Trial Term, New York County.

Action by Jacob Goldberg, administrator, against Martin Herman and another. From a judgment for plaintiff, and an order denying a motion for new trial, defendants appeal. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Eidlitz & Hulse (Frederick Hulse, of counsel), for appellants.
Mark Goldberg (Harry A. Gordon, of counsel), for respondent.

CLARKE, J. The defendants owned two loft buildings on Broadway, Nos. 712 and 716. John McNulty was employed as engineer and janitor for these buildings for $155 a month, to take care of the engine room, the elevators, and the halls. In case he required any as-

sistance, he was required to pay for it out of this amount. There were in 712 Broadway two elevators, one for passengers and the other for freight. This building had eight floors. The freight elevator shaft was so constructed that in the basement the opening into the shaft was not closed by a door. The openings from the shaft into the several. lofts were by double doors, which could not be opened from the lofts. The knob moving the latch, being on the inside, was therefore controlled from the elevator. The elevator was 4 x 6 feet, and diagonally across the top, from northeast to southwest, ran beams to which were attached the four cables by which the elevator was raised and lowered. The ends of these diagonals ran upon metal slides. The elevator was operated by the usual starting and stopping cable, which ran through a hole at the bottom and a small pipe at the top of the car. One half of the top of the elevator was covered by a wire netting, which sloped from the center beam towards the sides; the other half was open, so that lengthy articles, boards, etc., could be handled. At the top the shaft was covered by a lattice work of iron straps. When the car was at the eighth floor, its upper beam came within from 3½ to 4 feet of this lattice work.

Plaintiff's decedent, a boy over 15 years of age, had been employed, first in running the passenger elevator, and subsequently the freight elevator. He commenced work about the middle of October, 1906, and the accident occurred on the 26th of December. His brother had preceded him in running the freight elevator. He testified that he had greased the slides upon the orders of McNulty with a grease or oil can and a brush, by getting on top of the elevator in the basement, and raising it up three feet at a time, and greasing the slides on each side. He testified that on the morning of December 26th, at about half past 7, he was coming along the street with his brother, going to work; that McNulty was standing outside in front of the door, and that he heard McNulty say to his brother that the first thing to do was to take the oil can and the brush and go upstairs and grease the slides on the freight elevator. He also said that he had previously seen his brother greasing the elevator, as did other witnesses; that about 9 o'clock he saw his brother on top of the elevator car, and the car was then all the way up, as far as it could go, at the top of the building. He was lying right at the edge of the car. One leg was in between the side of. the car, in between the side of the shaft and the car. One arm was between the shaft and the elevator, going down between the shaft and the elevator, and the other was on top of the car, and that there was an oil can and brush.

Drago, another witness, testified he saw the decedent dead, between the elevator and the wall. "The elevator was on top of the floor. * * * We could not open the door from the inside. The door opened from the elevator. There came a boy, and we broke in, * * * and see the boy was between the elevator and the wall, up on top. * * * He had one can with grease in his hand."

A witness for the defendant testified that he assisted in taking the deceased away from the car. "The boy was killed on the side of the car where the screen was. His body was on top of the screen. It

was not up against the top of the roof. He was lying alongside of the elevator shaft." "When I saw the body, the body of the car itself was not above the eighth floor. It stopped right at the floor where it was always stopped, at the eighth floor; the inside of the car." He said he could not say how far the top of the cross-beam was below those iron slats. "I noticed on other days that it was two or three feet. A man could lay down. A man could lay down on top of the car and not touch the top. If he was standing up, he would get knocked." The distance between the top of the freight car, when it was at a standstill at the eighth floor, another witness testified, and the top of the shaft, was about four feet; that when the elevator was up as far as it would go there would be about four feet between the top of the car and the top of the shaft. Goldberg, the brother, testified that when he ran the car as far as it would go the top of the cross-beam was about half a foot below the iron slats. McNulty was dead at the time of the trial.

The case was submitted on the common-law liability. From the evidence it appears that the boy in the performance of his duty was on top of the elevator, engaged in greasing the slides, and that in some way or other, not disclosed, he was crushed. There is no evidence whatever as to how the accident occurred; as to whether the car was moved by the boy's pulling the rope, or by some one else. I think it is thoroughly established that the rope could not have been pulled from any of the lofts, because there was no way to open the doors into the lofts, except from the elevator. There is no evidence that anything was out of order in the machinery, or ever had been, or that the elevator had ever been moved, either up or down, of its own motion; and it is established that immediately after the accident the machinery was in good order, because the car was moved up and down in the usual way by the controlling rope, and remained in the position moved to by the operator.

It seems to me that this is one of those cases where the cause of the accident is left absolutely to conjecture. Whether the boy started the elevator himself, or whether he slipped and fainted beforehand, or whether it was started from below at the cellar, or whether he miscalculated his distance, we do not know. There is the mere bald fact that, having been ordered upon the elevator to do a certain job, with which he was familiar, he is subsequently found crushed. Of course, in death cases, the rule has been relaxed to a certain extent as to the amount of evidence required to show a want of contributory negligence; but I do not understand that it has been entirely abrogated. or that the necessity of showing the defendant's negligence does not exist. Baxter v. Auburn & Syracuse R. Co., 190 N. Y. 439, 83 N. E. 469; Gallagher v. New York City Ry. Co., 124 App. Div. 868, 109 N. Y. Supp. 515. To sustain this judgment the court must rely upon speculation, surmise, and conjecture to an extent beyond any case that has been called to our attention.

In Nichols v. Searle Mfg. Co., 134 App. Div. 62, 118 N. Y. Supp. 651, an elevator accident, the court said:

"The whole case is surrounded with doubt and conjecture, and it cannot be said that the unfortunate accident was due solely to the negligence of the de-

fendant. The rule requiring proof of freedom from contributory negligence is relaxed to the extent that less evidence is required where the victim of the accident has lost his life, and no one saw the occurrence. But, nevertheless, there must be some evidence which tends legitimately to prove the fact. In this case there is an absence of any evidence on that point. * * * Moreover, this is not a case where freedom from contributory negligence can be inferred from the nature of the accident itself, for the reason that the operation of the elevator was directly under the control of the deceased, and upon his acts in the management of the same the accident may have depended, and it was necessary to show, not necessarily by direct evidence, but by circumstances having at least some probative force, that it was not his act or omission which brought upon himself the unfortunate fatality."

Upon this record the plaintiff has failed to sustain the burden imposed upon him by law, and the verdict is not supported by the evidence.

The judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur.