uted for the purposes of organization. The corporation then proceeded with the business, until the death of the testator, April 9, 1907.

The plaintiff, while conceding the existence of the partnership down to the time the Citizens' Lumber Company was formed and took over the property, insisted the copartnership was then terminated, that testator no longer held any interest in the property or the stock of the corporation as trustee for him, but that he agreed at that time to account for plaintiff's interest in the property and business theretofore existing, and to pay him therefor, and it was upon this basis that his claim was made. The defendant claimed, however, and the court found, that the status and relationship of the parties as to the property and business and their interests therein remained unchanged until testator's death, that the plaintiff knew all about the changes made when the corporation was organized and took over the property, and assented thereto, and that there was no personal indebtedness by the intestate to the plaintiff at his death. There were also claims for services as architect and for money loaned, but the referee held these were not well founded. The result was a dismissal of the claims in controversy, with costs.

The questions involved were mainly of fact. The evidence was somewhat extended, and the conditions complicated. The referee seems to have arrived at correct conclusions, and we should not reverse him. Upon the finding above referred to the theory of personal indebtedness as here claimed cannot be maintained. The plaintiff will still be entitled to have an 'accounting; but it will involve, not alone the affairs of the partnership proper, but of the corporation also, and that is not possible in this action, or at least under the evidence given before the referee. While the referee in his opinion deals with and discusses the figures with reference to the partnership matters, yet nothing in the nature of an accounting was carried into the findings themselves. After making the findings above referred to, he could not go into the accounting, as I have already suggested.

If the plaintiff desires an accounting of the whole business conducted under the partnership and the corporation, he must present his claims in a different form from that litigated under this reference, or at least must give additional evidence, not given before the referee. All concur.

---

WHEELER v. SUNDSTROM & STRATTON CO.

(Supreme Court, Appellate Division, Second Department.   March 17, 1911.)

1. RAILROADS (§ 383*)—INJURY TO PERSONS ON TRACK—CONTRIBUTORY NEG-
      LIGENCE.
      A civil engineer representing a railroad company in the construction by a contractor of a railroad track was struck by a train on a temporary construction track, carrying soil loaded from an excavation. He was familiar with the details of the work, and he stood with his back to the train as it approached. The train could have been seen in time, and he could have escaped from the track. *Held*, that his failure to take any care to avoid the accident precluded a recovery, though the noise of an-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

other train prevented him from hearing the train that struck him, and though he was so absorbed in his work that he relaxed vigilance, and though he relied wholly on the conduct of the trainmen.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1305–1310; Dec. Dig. § 383.*]

2. RAILROADS (§ 385*)—INJURY TO PERSONS ON TRACK—CONTRIBUTORY NEGLIGENCE.

A civil engineer representing a railroad company in the construction by a contractor of a railroad track, and who is familiar with the details of the work, has no legal right to rely wholly on the conduct of operators of trains on a temporary construction track.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1311–1313; Dec. Dig. § 385.*]

3. NEGLIGENCE (§ 136*)—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

The question of contributory negligence is not for the jury, unless there is some evidence direct or inferential that the accident occurred without want of due care on the part of the person injured.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 333–346; Dec. Dig. § 136.*]

4. EVIDENCE (§ 265*)—ADMISSIONS—EFFECT.

Where the uncontradicted testimony supports the testimony of a witness, as to admissions by decedent, killed in an accident, the admissions are entitled to weight, though oral admissions may be deemed the weakest evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1029–1050; Dec. Dig. § 265.*]

5. RAILROADS (§ 381*)—INJURY TO PERSONS ON TRACK—CONTRIBUTORY NEGLIGENCE.

One representing a railroad company in the construction by a contractor of a railroad track, while on the construction work, is neither a trespasser nor a licensee, but the contractor is not an insurer of his safety, and he must exercise due care.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1285–1293; Dec. Dig. § 381.*]

Thomas, J., dissenting.

Appeal from Trial Term, Orange County.

Action by Mary A. Wheeler, administratrix of Wallace E. Wheeler, deceased, against the Sundstrom & Stratton Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and RICH, JJ.

John Bright (Abram F. Servin, on the brief), for appellant.
M. N. Kane, for respondent.

JENKS, P. J. This is a common-law action for negligence. The defendant was constructing a line of railway. The work embraced the use of a temporary single construction track parallel 30 feet from the railway. The construction track ran from an excavation about 900 feet south of a certain culvert then under construction across that culvert to a fill about 900 feet north of it. Two trains each of about 12 open cars carried the soil, loaded from the excavation by a steam shovel, along the construction track to the fill. The trains, pushed by a locomotive engine, alternated, passing one another by a siding

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

south of the culvert that ended about 200 feet from it. The interval of time between trains as estimated by the superintendent and by the president of the defendant was from 15 to 20 minutes. These trains were working on the day of the accident. On that day the plaintiff's intestate, Wheeler, Lamb, and Sundstrom were together at the work. They walked along the main track until compelled to leave it by an approaching freight train. Then they crossed to the temporary construction track, and took their way along that track northerly to the culvert. They stopped close to the culvert, and stood there in discussion and in examination of the culvert. As they stood facing to the north, they were struck by a train running northerly from the excavation. Wheeler was killed and his companions were injured.

I think that we cannot sustain the judgment which Wheeler's administrator has recovered against the defendant. I can find no evidence, direct or inferential, that he or his companions took any care to avoid this accident. Wheeler was the resident civil engineer who represented the railroad company in that construction, and the work was under his daily observation. He must have understood the work and the details thereof. He must have known the peril of standing upon this construction track with his back to a direction in which one of these trains must travel. Lamb was the superintendent and Sundstrom was the president of the defendant. And they, too, were perfectly familiar with the work and with its methods. The record is bare of any proof that shows or permits the inference that Wheeler or his companions at any time when they went onto the construction track, or while they walked upon it, or while they stood near the culvert at gaze, ever looked or listened or sought any safeguard against an oncoming train. Lamb was a witness for the plaintiff, but his testimony is that they were so engrossed in an animated discussion that they stood upon and near this construction track, "with our backs to the oncoming train, forgetting all about it." Sundstrom was a witness for the defendant, and his testimony fails to show that any precautions whatever were taken by Wheeler or by Lamb or by himself. Indeed, the record is not only negative of any care, but is affirmative of the lack of any care. There is sufficient proof that the oncoming train could have been seen from the viewpoint at the culvert. Lamb testifies that they could have seen a train as far distant as the steam shovel, over 900 feet, and he is confirmed in this statement by Sundstrom. Two hundred feet is the shortest distance estimated of the view, and that is the judgment of but one witness. These men were not in a situation where escape from the train was physically impossible, as if they had been far out on some high trestle work. Indeed, Lamb testifies that, if he had heard the construction train, he "wouldn't have got struck." While there is no proof of the rate of speed of the train, naturally it could not have been high. Possibly these men relied almost unconsciously upon the usual noise of a train as a warning, and yet possibly that noise could not be heard because of the passing of the freight train on the main track. If this were so, then they should have looked. Possibly they were so absorbed in a discussion which the evidence shows was animated and acute as to be oblivious of the peril of their place, so that their interest

in the work, coupled with that familiarity therewith that so often relaxes vigilance, was their undoing. Possibly they relied wholly upon the conduct of any train that might approach them, but they had no legal right so to do. Rodrian v. N. Y., N. H. & H. R. R. Co., 125 N. Y. 526, 26 N. E. 741. But, whatever the explanation may account for such careless conduct, there is none in this record that excuses it. The question of the plaintiff's conduct was not for the jury unless there was evidence, direct or inferential, that the accident occurred without the lack of due care on his part. Tolman v. Syracuse, Binghamton & N. Y. R. R. Co., 98 N. Y. 198, 50 Am. Rep. 649; Republic Iron & Steel Co. v. Tobin, 164 Fed. 38, 90 C. C. R. 262. Although oral admissions may well be termed the weakest evidence, the uncontradicted testimony in this case gives credence to the testimony of Gleason (the engineer of the steam shovel, who went to the scene after the accident) that Wheeler, who was conscious and whose mind seemed clear, said:

"It was pretty tough to be cut up that way. He didn't never expect to get it that way. * * * It was his own fault, and nobody else to blame."

The learned counsel for the plaintiff lays stress upon the fact that Wheeler was rightfully at the point where he was run down. His work may have called him to that place. If so, then he was neither trespasser nor licensee, and the nature of the defendant's obligation was different. But it was not that of an insurer, and Wheeler was not relieved from his obligation of due care.

Without consideration of the defendant's conduct, I advise that a new trial be granted, costs to abide the event.

BURR, CARR, and RICH, JJ., concur. THOMAS, J., dissents.