McAdam, J.
“ Theauthorities bearing on the question of negligence, are so numerous, and the distinctions drawn so subtle, that great care is required in determining which are, and are not, applicable to the case in hand. Slight variations in the facts will be found to distinguish one from another, leaving only the underlying principles which are of an elementary character, to serve as a guide. Indeed, it is as difficult to find ready-made law to fit every case of negligence as it is to get ready-made clothes to fit every individual. There is a process of readjusting, distinguishing, limiting, and explaining going on all the while to make things suit the case at hand, without clashing with what was decided *340 before, on facts slightly different, until it has become a study to determine with accuracy which adjudications fit new cases, and which do not.
“ Judge Peckham thus expresses the situation in Cullen v. Norton, 126 N. Y., 5. ‘ There is very little room for disagreement as to the principle of law in this class of cases, but the difficulty lies in their application to the facts of each special case.’
“ It may be assumed that a ‘ master is bound to furnish reasonably safe and suitable implements for the use of the servant and a reasonably safe place of employment, considering the nature of the employment itself. Cullen v. Norton, supra.’ But where a servant, without any express direction from the master, or any assurance of safety by him, enters an excavation, the dangers of which are obvious and apparent, and consequently as well known to the servant as they would have been to the master, had he been present, it must be held that the servant in doing the imprudent act assumed the dangers consequent upon it, whatever they were. See Hussey v. Coger, 112 N. Y., 614; Filbert v. D. & H. Canal Co., 121 Ib., 207 ; McQuigan v. D., L. & W. R. R. Co., 122 Ib., 6l8. It cannot be said in such a case that the master was negligent and the servant free from fault; and this is a fair statement of the present case. The master could not relieve himself from the duty of supplying and maintaining suitable instrumentalities for the work required, by placing the business in the hands of an agent. Fuller v. Jewett, 80 N. Y., 46 ; Crispin v. Babbit, 81 Ib., 521, approved in Cullen v. Norton, 126 Ib., 5. In other words, the negligence of a servant does not excuse the master from liability to a co-servant for any injury which would not have happened had the master performed his duty. Coppins v. N. Y. C. & H. R. R. R. Co., 122 N. Y., 557. Yet the negligence of a co-servant even of a higher grade as a rule defeats a recovery. Cullen v. Norton, supra.
*341 There was no attempt to prove that any one representing the defendant told the decedent to enter the excavation or that it was suitable or safe to enter. In Kranz v. L. I. R. R. Co., 123 N. Y., 1, the decedent was ordered to aid in cleaning certain water pipes placed underground at the defendant’s depot at Bay Ridge. A trench had been opened for that purpose by the section man and laborers under his direction some hours before the decedent commenced work upon the pipes. That was a necessary step to furnish him a proper opportunity for the performance of his duty. He entered the trench and began to disconnect the pipes, and while so engaged the earth caved in upon him, and he died of suffocation. The court held that 6 those who opened the trench were performing the master’s duty to the deceased in preparing a suitable place and opportunity for the labor of the intestate in the discharge of his duty . . . and when the master ordered the intestate to perform his work as a machinist in the trenches opened and prepared for him, he had a right to assume that the place had been made reasonably safe by the master through other and competent servants employed by him.’ There is no proof here that the defendant ever saw the trench or that it was prepared by him or his employees, as a place for the decedent to perform his work, or that he assumed or performed any duty respecting it. These facts are significant in distinguishing the present from some of the cases cited. In the absence of the express or implied direction from the master to enter the trench in its unprotected condition, or any express or implied representation as to its safety, it is difficult to understand how the legal principle carried to the border line by the Kranz case can be extended to the present contention. There was no proof of notice to the defendant of the danger as in the Pantzar v. Tilly Foster I. M. Co., 99 N. Y., 368, and nothing from which it may be inferred. In McGovern v. Central Vermont R. R. Co., 123 N. Y., 280, *342 the master directed the servant to perform work at a place which proved dangerous, and the court held that where such danger may be foreseen and guarded against by the exercise of reasonable care, it is the master’s duty to exercise such care and adopt such precautions as will protect the servant. The work in question was performed at a distance from the master’s shop, and in an excavation about which perhaps he knew nothing. The performance of the job here was delegated to the servant who by the circumstances was put on his caution as to danger, and he cannot attribute to the master the consequence of a hazard apparent to the eye, and which he was- bound to discern, for he knew the master had no one else to represent him at the job, and that in the nature of things he was compelled to rely entirely upon his own judgment as to the safety of the undertaking. In this he erred, but it does not follow that the master became liable for his error of judgment. The master is bound to know that his appliances are reasonably safe, unless the defect be one which could not be discovered by careful inspection or by application of appropriate tests. . Probst v. Delamater, 100 N. Y., 266. If the defects are obvious and the dangers apparent the master is not liable. Hickey v. Taaffe, 105 N. Y., 26 ; Shaw v. Sheldon, 103 Ib., 667; Appel v. B. N. Y. & R. Ry. Co., 111 Ib., 550; DeForest v. Jewett, 88 Ib., 264; Williams v. D. L. & W. R. R. Co., 116 Ib., 628. It has been often said that the master is not liable for defects in such things, to a servant whose means of knowledge thereof were equal to those of the master. But this is an erroneous statement. Sher. and Redf. on Neg., 4th ed., § 217. The master has no right to assume that the servant will use such means of knowledge; because it is no part of the servant’s duty to inquire into the sufficiency of those things. The servant has no right to rely upon the master’s inquiry; because it is the master’s duty thus to inquire ; and the servant may justly *343 assume that all these things are fit and suitable for the use, which he is directed to make of them. The servant is liable only in respect to those things, concerning which it is his duty to inquire. Ib. The distinction is clear enough, but, picking out the cases in which it is to be applied—difficult. Still, every person, sui juris, is supposed to be sensible to dangers at once apparent, and is to be deemed reasonably intelligent enough to avoid them. This natural instinct, necessary to self-preservation, is daily exercised in our large cities, and crowded thoroughfares, in crossing and re-crossing streets, and in country-towns in crossing and re-crossing railroad tracks. The care to be exercised should be commensurate with the danger to be reasonably apprehended.
“ The theory upon which Kranz v. L. I. R. R. Co., supra, and kindred cases was decided is, that the law remembers that the respective situations of the master and servant are unequal, and excuses the servant for deferring to the superior judgment of the master. If, therefore, the master orders the servant into a situation of danger, and he obeys, and is thereby injured, the law will not deny him a remedy against the master, on the ground of contributory negligence, unless the danger was so glaring that no prudent man would enter into it, even where, like the servant, he was not entirely free to choose. Thus, where a hod-carrier, engaged at work about an excavation, perceiving that it was dangerous, manifested some reluctance to descend it, but was ordered by his employer to do so, and obeyed, and the earth caved in upon him and killed him, it was held that his widow might recover damages of his employer. The order was an implied assurance that there was no danger; the laborer rightfully relied upon the superior information and judgment of the master ; and whether he was negligent under the circumstances in descending into the pit is a question for the jury. See cases collated in 2 Thompson on Neg., 975 ; Ib., 976, § 5. In these cases, it is a natural yielding to *344 a superior who commands, and the servant, like the soldier, is supposed to obey, relying on the knowledge and ability of the commander. There are cases, however, where the master is not liable for defective machinery or improper appliances, among which are those : (1) Wherein the defects and dangers are so obvious as to become known to the servant. The maxim volenti non Jit injuria applies in such cases, for as a general proposition that no one can maintain an action for a wrong, where he has consented or contributed to the act which occasions his loss. Tihdal, C. J., 2 Scott, N. JR., 257. And the master is under no higher duty to provide for the safety of the servant, than the latter is to look for his own safety. (2) Wherein a skilled engineer is placed in charge of an engine, the master not being a skilled engineer himself. Here the master relies on the judgment of the servant as to the safety of the machine, and not the servant upon the master. Thompson on JNeg., supra, p. 980. And yet this presumption may be overcome by proof that the master knew of defects, the servant, without fault, had not discovered. (3.) Wherein an excavation is made by the servant himself in the absence of the master or an alter ego and the earth caved in, the servant must be held to have assumed that risk as incidental to his employment, for there is no possible basis for the claim that he relied upon his master’s superior judgment, or upon any express or implied assurance of safety by him.
“ In Leary v. R. R. Co., 139 Mass., 580, Mr. Justice Deveíts uses these words : ‘ But the servant assumes the dangers of the employment to which he voluntarily and intelligently consents, and while ordinarily he is to be subjected only to the hazards incident to his employment, if he knows that proper precautions have been neglected, and still knowingly consents to incur the risk to which he will he exposed thereby, his assent dispenses with the duty to take such precautions.’ The situation *345 here plainly told the servant he must rely upon his own intelligence, and he presumably so relied, and there is no theory upon which personal negligence, the gist of the action, can be imputed to the master. Before he can he charged, knowledge of the defect or danger must be brought home to the employer, or proof given that he omitted the exercise of proper care to discover it. Devlin v. Smith, 89 N. Y., 470.
u The defendant could not be negligent unless he did something he ought not to have done or failed to do something he should have done, and this must be determined from what he knew or ought to have known from the circumstances existing at the time. The mere fact that an accident occurred which caused an injury is not generally of itself sufficient to authorize an inference of negligence. Dobbins v. Brown, 119 N. Y., 188 ; Cosulich v. Standard Oil Co., 122 Ib., 118. And this upon the principle that if the evidence would justify an inference consistent with the absence of negligence on the part of the defendant just as well as it would an inference of negligence the plaintiff cannot recover. See cases collated in 1 iSher. and Sed. on Neg., 4th • ed., p. 69, note 1. There is here no proof, as in Kranz v. L. I. R. R. Co., supra, that a separate gang of men (not including the person injured), made the trench, and that the employer ordered the decedent into it to do other work. Inferentially, the trench was dug by the decedent himself, or he went into it without the directions of the employer and in his absence, and before it was made safe by boarding up the sides. There being no evidence upon the subject, this is the inference, for the law will not infer negligence as a ground of action, where the absence of it is as consistent as its presence.
“ The former presumption that every person will take care of himself from regard to his own life and safety cannot take the place of proof. Cordell v. N. Y. C. & H. R. R. R. Co., 75 N Y, 330; Riordan v. S. S. Co., *346 36 N. Y., State R., 476. The burden is on the plaintiff to prove that there was no contributory negligence on the part of the deceased, Hart v. H. R. B. Co., 84 N. Y., 57; Hale v. Smith, 78 Ib., 480; Muhr v. The Mayor, 15 Daly, 12; Tolman v. S. B. & N. Y. R. R. Co., 98 N. Y., 198, unless the nature of the accident or the state of the proofs, show the absence of contributory negligence. It will not do to allow jurors to found verdicts on anything but facts established by evidence or inferences properly drawn from those facts, or as the Court of Appeals of Maryland, held in the Baltimore and Potomac E. R. case, January, 14, 1892. Speculations as to how or from what cause an accident occurred cannot be allowed to stand for proof, or be made the basis of a verdict in favor of the party.upon whom the burden rests. There must be evidence from which the jury may reasonably and properly conclude that the accident was produced by some negligence or wrongful act of the defendant.
“ There was no solid legal ground for holding the defendant liable for the unfortunate accident that befell the decedent, and no error in withholding the case from the jury, if a plumber, tinsmith, or carpenter sends an employee out to do a job about which the master knows nothing, the latter is not an insurer of the safety of the undertaking, and is not liable if he gives no positive direction or assurance. The duty of inquiry would clearly be cast upon the servant in such a case.
“ The second Branch of the defence relates to the payment of the $400. This sum was paid to Krause, May 15, 1890, and he immediately turned $60 over to the father of the deceased, who received it knowing that $400 had been accepted in payment.
“ The subsequent administration by Krause and the father, by operation of law, related back and made the payment to them, as in their representative capacity. See Priest v. Watkins, 2 Hill, 225 ; Hart v. Marine Ins. *347 Co., 8 Johns., 126 ; 1 Williams on Exrs., 240 ; 39-76, Farrell’s Estate, 1 Tucker R., 110; Joyce v. McGuire, 2 City Ct. R., 422. The damages recoverable being unliquidated in their character (Code, § 1904 and notes), this payment amounted to an accord and satisfaction. Coon v. Knap, 8 N. Y., 402; Berrian v. The Mayor, etc., 4 Robt., 538; Danziger v. Hoyt, 120 N. Y., 190; and see Jaffray v. Davis, 124 N. Y., 164, which discharged the cause of action, if any existed.
A. Edward Woodruff, for appellants.
Thomas C. Ennever, for respondent.
“ For the reasons stated, the nonsuit was rightfully directed, and the motion for a new trial must be denied direct.”
Per Curiam.
The judgment and order should be affirmed, with costs, upon the opinion filed by the learned trial judge on the denial of the motion for a new trial.