to the agreement.   Bowen v. Beck, 94 N. Y. 86; Post v. Railroad Co.,
123 N. Y. 580, 26 N. E. 7;  Association v. Kellogg, 141 N. Y. 348–356,
36 N. E. 326;  Thomas, Mortg. § 567 et seq.   It was not expected
Wilson would erect the factory.   He did not so represent to Mason,
but stated .it was to be done by others.   Wilson was interested be-
cause he was the plaintiff's mortgagor and obligor, and also had large
claims upon the land.   The augmentation in value would inure to his
benefit.   The indebtedness represented by the bond and mortgage in
suit was primarily Wilson's, and he was, therefore, the one who would
be likely to procure the release.   But no deception was practiced
upon Miss Hazard or Mason.   The man who was after the release
was Grant, for he was to put money into the plant;  and while all
lienors and parties legally interested in the land were to reap indirect
benefits accruing from the erection of the factory, yet he above all
others needed .and solicited the release.   It was not incumbent upon
Wilson to disclose the name of his principal, and, even if it had been
supposed he was the real party to erect the buildings, still the principal
in fact would have been liable to plaintiff, and could, therefore, have
insisted upon the release.   Ludwig v. Gillespie, 105 N. Y. 653, 11 N.
E. 835.   Nothing could be charged against Grant because he did
not obtain the release in form at the time.   Plaintiff might well refuse
to execute that instrument until the factory was erected.   If a formal
release had been delivered by Miss Hazard July 25th, when the letter
was written, she would be at the mercy of Wilson or his undisclosed
principal, Grant.   Their refusal to comply might involve her in liti-
gation, but her agreement to release is as enforceable against her
upon performance by Grant as an agreement to convey.   The plain-
tiff is entitled to the usual judgment of foreclosure, but exempting from
the sale the acre described in the answer of defendant Grant.

Ordered accordingly.

---

(27 App. Div. 52.)

## MARTIN v. THIRD AVE. R. CO.

(Supreme Court, Appellate Division, First Department.   March 11, 1898.)

1. STREET RAILROADS—RIGHTS OF PEDESTRIANS.
    While the established principles are not to be relaxed, which impose the
    obligation upon street-railway companies, whose cars are propelled rapidly
    through crowded city streets, of having their cars under such control, and
    to run them at such speed, as to enable pedestrians who are crossing pru-
    dently to do so with complete safety, yet pedestrians are not absolved from
    observing at least some slight care and caution so as to avoid being injured.

2. SAME—CONTRIBUTORY NEGLIGENCE.
    A foot passenger, while passing over a city avenue at a street crossing, kept
    his eyes fixed on the ground, and gave no evidence of looking or listening for
    the approach of a car on the tracks of defendant's street railway, until,'
    having reached the further rail, and when a car was within five feet of
    him, he was roused from his lethargy, and then, in his hesitation to act in
    the sudden emergency, was unable to extricate himself, and was struck by
    the car.   Held, on the facts, that there was a failure to establish absence of
    contributory negligence.
    Ingraham and Patterson, JJ., dissenting.

Appeal from trial term, New York county.

Action by Maria Ewing Martin, administratrix, against the Third Avenue Railroad Company. From a judgment entered on a verdict and from an order denying a new trial defendant appeals. Reversed.

This is an action to recover damages for the death of the plaintiff's intestate, alleged to have been caused by the negligence of the defendant. On the morning of January 20, 1896, at about half past 9, the deceased, while crossing Third avenue from east to west, on the south crosswalk at Eighteenth street, was struck by one of the defendant's cable cars, and received injuries from which he died the following day. The day was wet, and the street muddy, and the deceased was walking at a slow pace, with his eyes bent upon the ground in front of him. There is no evidence that he saw the car or was aware of its approach before it struck him. All the testimony on that subject tends to show that he seemed not to see it. The car was going at a fast rate after leaving Seventeenth street. A witness who was on the car says that when the deceased left the curb the car was about 30 feet south of the crosswalk at Eighteenth street. Another witness, who observed the accident from the east sidewalk, says the car was then in the middle of the block, which would be about 100 feet south of that crossing. The distance from the curb to the westerly rail of the northbound track, where the deceased was when the car hit him, is about 30 feet. He was walking slowly and the car was going fast. When within about 30 feet from the corner of Eighteenth street, the gripman's head was turned towards the east sidewalk, where two women were walking, holding up their skirts out of the mud. A car going south having stopped at the lower crosswalk of Eighteenth street while the deceased was crossing, he hesitated a moment in the middle of the up-town track, and then started as if to walk around the rear of the south-bound car. The gripman's attention was taken away from the women on the sidewalk when the car was within about five feet of the deceased, who was then on the westerly rail of the east track, so that the gripman just had time to give two taps of his gong and throw on his brake when the west side of the car struck the deceased.

Argued before VAN BRUNT, P. J., and PATTERSON, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Nathan Ottinger, for appellant.

B. F. Tracy, for respondent.

O'BRIEN, J. The principles of law relating to negligence have been frequently formulated and are well settled, but our difficulty arises in their application to the facts of a given case. In Hart v. Bridge Co., 84 N. Y. 62, which in effect reversed the rule laid down in the same case in 80 N. Y. 622, the court say:

"The question presented by the charge is whether the burden was upon the plaintiff to establish that there was no contributory negligence. In Hale v. Smith, 78 N. Y. 483, it is held that, in cases where contributory negligence may be claimed, it is incumbent upon the plaintiff to satisfy the jury by a preponderance of proof; and it is said by Rapallo, J., 'that the absence of contributory negligence is part of the plaintiff's case, and the burden of satisfying the jury upon that point rests upon him.' This doctrine is also upheld in other cases. See Warner v. Railroad Co., 44 N. Y. 471; Reynolds v. Railroad Co., 58 N. Y. 248; Cordell v. Railroad Co., 75 N. Y. 330. Within this rule, we do not discover any valid ground of exception to the charge of the judge. As the evidence stood, there was no proof either way, and it was by no means clear, in the absence of evidence, that the deceased was not chargeable with contributory negligence. It was not sufficient that the evidence, in this respect, was equally balanced, and it was essential that at least a prima facie case should be established."

And in Weston v. City of Troy, 139 N. Y. 281, 34 N. E. 780, the court of appeals, speaking through Andrews, C. J., said:

"It is a fundamental principle in the law of this state that, in an action for a personal injury based on negligence of the defendant, the absence of negligence on the part of the plaintiff contributing to the injury must be affirmatively shown by the plaintiff, either by direct proof or by circumstances, and that no presumption arises, from the mere happening of an injury and proof of negligence on the part of the defendant, that the plaintiff was free from blame."

We all agree that there was proof given by the plaintiff which made it proper to submit the question of the defendant's negligence to the jury; because it appeared that the gripman in the management of his car, instead of performing his duty by observing objects ahead of him upon the track, had his attention diverted by looking at some women who were on the sidewalk. As said in Ellick v. Railway Co., 15 App. Div. 557, 44 N. Y. Supp. 524:

"The obligation which rested upon the defendant was to so manage the car as to have it under control at the time when it approached and crossed the street crossings. At this point it was to be expected that pedestrians would be encountered, in consequence of which it was incumbent upon the operator of the car to maintain a sharp lookout for them, to have the car under control, and to so manage the same as not to endanger the life or limb of persons making use of such crossing."

While, therefore, the plaintiff sustained the burden resting upon her on this branch of the case, with reference to the defendant's negligence, we have the serious question presented whether she sustained the further burden of showing that the deceased was free from negligence on his own part contributing to the injuries. It has been held that:

"The burden of the question of contributory negligence is successfully borne if the facts and circumstances, coupled with the occurrence of the accident, are consistent with the exercise of some care on his part, such as might reasonably be expected of him under the circumstances." Tolman v. Railroad Co., 98 N. Y. 203.

And again:

"Passengers must cross in front of moving cars, and they must judge in any given case whether it is safe to attempt it. Contributory negligence cannot be predicated on the mere fact of an attempt to cross in front of a moving car. Otherwise one could never cross the track of a street railroad where cars run at a rapid rate of speed and close together." Doller v. Railway Co., 7 App. Div. 283, 287, 39 N. Y. Supp. 170.

This statement of the law, however, is to be regarded as supplemented by what was said in Cowan v. Railroad Co. (Sup.) 1 N. Y. Supp. 612:

"The necessity upon the part of a passenger in crossing a railway in the city of New York to look to ascertain whether there are vehicles coming which may endanger the crossing is too well settled to need authority. It is the duty of every such passenger to make a reasonably vigilant use of their eyes and ears to ascertain whether in crossing a street any danger will be incurred."

Applying these principles, if there were any evidence in the case from which it could be inferred that the deceased, before entering upon the easterly track, had used his eyes or ears to ascertain the position of approaching cars, and after doing so had pursued a course that any reasonably prudent man might have followed in the belief that he could cross in safety, then, though he may have been in error as to his conclusion, and, instead of crossing in safety, was injured, it would properly be a question for the jury as to whether he was

or was not guilty of negligence. Or if, in the exercise of reasonable prudence, he had placed himself in a position of danger, and when there called upon to act in an emergency, the fact that he did not select the safest course, and was injured, would not, as matter of law, render him guilty of contributory negligence. If, however, one proceeds to cross, and without observing any care, and in wanton disregard of consequences, is placed, as a result, in a position of danger, it can hardly be urged that his own contributory negligence did not play a part in inflicting the injuries which followed. In other words, the conduct of the deceased, after he had placed himself in a position of danger, even though the course he then adopted was not the most prudent, would not constitute negligence per se. But the question still remains whether his getting into the place of danger was the result of his own contributory negligence. As has been said, the burden was upon the plaintiff of showing that such was not the case by direct proof, or by other facts and circumstances from which the jury could infer it. In other words, the jury are not to be left to guess or speculate as to the conduct of the person injured, but the burden placed upon the plaintiff requires that some evidence should be produced from which the inference can be drawn that the person injured "exercised some degree of caution" (Dobert v. Railroad Co., 91 Hun, 28, 36 N. Y. Supp. 105), or "some care on his part such as might reasonably be expected of him under the circumstances" (Tolman v. Railroad Co., supra). It will be seen, therefore, that, although the extent to which the plaintiff must show care and caution is slight, there must, unless the rule is to be entirely abrogated, be some evidence; and it would hardly be claimed that this was supported by a showing that one approached and crossed the tracks of a city railroad, the motive power of which was electricity or cable, without making any attempt to look or listen for the approach of a car. The liability must be predicated upon the conduct of the parties prior to the creation of the dangerous situation. For it is with their subsequent conduct that we are concerned. Then, while there is sufficient to relieve the deceased from the charge of contributory negligence, it also appears that the defendant was then free from negligence, because the uncontradicted evidence is that the gripman rang his gong and applied the brake, and did all that was possible at that time to stop the car. Leaving out, therefore, the defendant's evidence, and taking the testimony most favorable which was presented on behalf of the plaintiff, it appears that the decedent, while proceeding across the avenue from east to west, not only failed to look or listen for the approach of a car, or to look to the north or south of him, at any time during his progress across the street, but, on the contrary, he was looking on the ground, at his feet, apparently absorbed in thought, and utterly inattentive to the approach of cars on the defendant's tracks. It is true that after having got as far as the west rail of the track, and when the car was within five feet of him, as the result of a car going down town, or perhaps due to the ringing of the gong on the up-town car, he was roused from his apparent lethargy to a sense of danger, and then, in his hesitation to act, due to the emergency that then presented itself, he was unable

to extricate himself, and was injured.    If it had been shown that
he had at any time looked, either before leaving the sidewalk or while
in the act of crossing, so as to give rise to an inference that he was
looking out for, or was aware of, approaching cars, and that in at-
tempting to cross he was only chargeable with an error of judgment,
an entirely different question would be presented.    Here, however,
there is a complete absence of any evidence from which it could be
inferred that he looked for or saw or knew of the approaching car,
or that he did aught but start from the sidewalk, and, at a leisurely
pace, with his head down, proceed to cross the tracks, without chan-
ging his gait, and, as the witnesses describe it, apparently lost in
thought, until he had reached a place on the track which was one of
danger and in which he received his injuries.

Pedestrians have the right to cross over streets and avenues, and
it is obligatory upon railroad companies in using the streets not to
interfere with such right.    This duty of looking out for passers-by
is greater when cars are approaching a crossing, because at those
points people in fact are more likely to be met with, and it is incum-
bent upon those in charge of the cars to have them under such con-
trol, and to run them at such a rate of speed, as to enable those who
are crossing prudently to do so, with complete safety.    We are not
inclined to relax the rule as to the degree of care required of those
managing street cars, as now propelled more rapidly by new meth-
ods, and which in our crowded streets and at our crossings are a
menace and a danger to passers-by.    But, while the responsibility
and vigilance exacted of those managing the cars is increased, we are
powerless, without disturbing a long line of well-settled authorities,
to absolve passers-by from observing some slight care and caution
so as to avoid being injured.

In the case at bar, considering the negligence of the defendant,
which was abundantly proven, we should have hesitated to interfere
with the verdict if, upon any view, there had been any evidence from
which the jury could have been justified in inferring that the dece-
dent did anything, either in the way of increasing his speed or using
his eyes and ears, thus manifesting that he was on the lookout for
or conscious of an approaching car, or that while crossing the tracks
he did aught to avoid creating the situation from which his injuries
flowed.    The absence of such evidence, we think, is fatal to the judg-
ment; and it should therefore be reversed, and a new trial ordered,
with costs to the appellant to abide the event.

VAN BRUNT, P. J., and McLAUGHLIN, J., concur.

INGRAHAM, J. (dissenting).    The action is brought to recover for
the damage caused to the next of kin of Thomas Ewing by reason
of his death, caused by one of the cars of the defendant on January
20, 1896.    The jury found a verdict for the plaintiff, and from a
judgment entered on that verdict defendant appeals.    One of the
plaintiff's witnesses testified that as this car, on its way up town,
approached Eighteenth street, the motorman was watching two
women upon the sidewalk; that, when it was about 30 feet from the

lower crossing, the plaintiff's intestate started to walk across the avenue; that there was a car on the down track of the defendant's road at Eighteenth street which had stopped on the southerly crossing on the avenue, and that just as that car stopped the plaintiff's intestate started to cross the up-town track. The car going up town was about five feet from the plaintiff's intestate when the gripman looked forward upon the track after having had his attention engrossed by the women on the sidewalk. The deceased was then about the middle of the track. "The old man crossed the up track. He was crossing the up track. I saw him when he was directly about the middle of it. He hesitated to cross. He was standing like that there. I cannot answer that he did that on the crossing and between the crossing. I could not see the crossing, looking forward." Before that time the gripman had not applied his brake or decreased the speed of the car after leaving Seventeenth street. The car was then going fast. The gripman at once endeavored to stop the car, but it was too late, and the plaintiff's intestate was run over, and suffered the injury from which he subsequently died. The gong was not rung, after the car left Seventeenth street, until the motorman attempted to stop the car within five feet of the deceased. Another witness, called for the plaintiff, located the car at about half way between Seventeenth and Eighteenth streets when the deceased started from the sidewalk to cross the track. This witness testified that as the car in question approached Eighteenth street, and after the deceased had got upon the east track, the car going south stopped in front of the deceased when he got in the middle of the easterly track; that he moved to go around the back platform of this car which had stopped; that when he got to the westerly rail of the up track the car struck him; that the motorman did not attempt to apply the brakes or stop the car until just as the car reached the south crossing of Eighteenth street, just before the deceased was struck.

The evidence offered on the part of the defendant tended to show that as this car in question was going up town, at its usual rate of speed, the deceased started to cross the track with his head down, looking neither to the right nor to the left; that he stepped on the track immediately in front of this car, and was struck by the car; that the gripman rang the bell several times before the deceased stepped upon the track. At the end of the plaintiff's case, the defendant moved to dismiss the complaint on the ground that the evidence failed to show that the defendant was guilty of negligence, and that it also failed to show that the plaintiff's intestate was free from contributory negligence. This motion was renewed at the conclusion of the case, and the court was then asked to direct a verdict for the defendant upon the same ground. An exception to the denial of these motions raises the principal point to be determined upon this appeal. The court charged the jury as follows:

"Now, it was his duty to use all reasonable care and prudence to protect himself. Knowing that there was a railroad there, it was his duty to use his senses. He had a right, it is true, to rely upon the rule that the defendant would exercise its rights in the streets with due regard to his personal safety, but at the

same time that duty of the defendant did not relieve him from the corresponding duty to govern his actions with care and prudence, and to regulate them prudently and carefully. It was his duty as he went upon that track, or before he went upon it, to ascertain, if possible, whether there was a car approaching. In order to do that, he was bound to use his faculties, his senses, such as an ordinarily prudent man would use under the same circumstances. If it was necessary for him to look, he was bound to look, for in the exercise of reasonable care and prudence a man would look and should look to ascertain whether a train was approaching, and it was his duty to use such care and prudence. He was bound to look, as it was his duty, and, if he saw a car approaching, it was his duty to protect himself, and keep out of the way of that car, if it was possible to do so with reasonable prudence. He was to exercise his faculties,— his judgment."

Upon the question of the negligence of the defendant we think there was evidence to go to the jury. This car was running upon a crowded thoroughfare, and as the car approached the Eighteenth street crossing there was a car approaching from the north, so that these two cars would pass near to this crossing. It was clearly the duty of the defendant's motorman to look out for pedestrians upon this crossing; and when these cars are passing at a high rate of speed over these crossings, where foot passengers are to be expected, the motormen on the cars are required to be vigilant to avoid injuring persons rightfully there, attempting to cross the street. The evidence of the plaintiff tended to show that instead of performing this duty the attention of the motorman was directed to some women upon the sidewalk, and that he was watching them instead of watching for pedestrians upon the crossing, thus neglecting the duty of watching for pedestrians passing across the street. The situation of cars passing at these crossings is one of obvious danger to pedestrians; and in a crowded thoroughfare of this character these cars are not justified in going at a high rate of speed over crossings provided for the use of those wishing to cross the avenue, without the exercise of active vigilance on the part of those controlling the motive power of the cars to prevent injury to those rightfully upon the crossings. And it is negligence for the person in charge of such car approaching such a crossing to allow his attention to be distracted by persons upon the sidewalk who had no relation to the operation of the car, and thus fail to observe a person upon the crossing until he was so close to him that it was impossible to stop the car before striking him. This car struck the deceased just as he had got upon the westerly track, having almost crossed in safety. If the motorman had been attending to his duty, and exercising the vigilance that the law imposes upon him, he could hardly have failed to see the deceased as he approached the track, or after he was upon it, in sufficient time to stop the car, or at least to have so much decreased its speed as to allow the deceased to go the one or two steps further necessary to pass to a place of safety. If the witnesses for the plaintiff are to be believed, we can account for the failure of the motorman to attempt to stop the car before he did, only by the fact that for some reason his attention had been diverted from the deceased, so that he failed to see him, until the car was so close upon him that the collision was inevitable. The evidence is uncontradicted that as soon as the motorman saw the deceased he did everything that he could to stop

the car, but the jury were authorized to find that when the attempt was made the car was so close to the deceased that it was impossible to stop it in time; and the only possible explanation is that the motorman was attending to something else, and was not looking for those who might be crossing the track at this crosswalk.

The more difficult question arises upon the claim by the defendant that the evidence did not show that the deceased was free from contributory negligence. In determining this question, we must consider the location at the time of the accident, the nature of the motive power used, and the control of the motorman over the car; the fact that in these avenues of a city a pedestrian about to cross has not only to watch for the cars on the tracks, but also to avoid vehicles using the avenue; and it is quite evident that his attention cannot be entirely concentrated upon the cars. He has a right to cross the avenue, and the defendant must so operate its road as to give one exercising the care of a prudent person an opportunity to cross. It would be manifestly impossible for any one to cross an avenue occupied as this is by cars going at a high rate of speed, passing almost continuously, if he was bound to stop when a car is in sight approaching the crossing, without being guilty of contributory negligence. There can be hardly a moment during the times of the day at which the cars are most frequent that a car is not in sight approaching either on one or both of the tracks. A person about to cross such an avenue has a right to assume that the cars will approach these crossings under such control that they can be so stopped, or the speed decreased, as to avoid injury to a person who has signified his intention to cross, and is actually engaged in attempting to cross, when the car is at such a distance that it could be stopped with the appliances used. If a person crossing a street acts upon such a presumption, it cannot be said to be contributory negligence. The deceased had a right to use this crossing; and, while it was his duty to exercise the care of an ordinarily prudent person to avoid an approaching car, it was just as much the duty of the motorman of the car to exercise such care to avoid running him down. If he was upon a crossing attempting to cross the street, he had a right to assume that the motorman on the car would see him in that position, and would either stop the car or so reduce its speed as to give him an opportunity to get off the track. The evidence is not very clear as to just how far this car was from the deceased when he attempted to step upon the track. The witnesses all say that the deceased was walking slowly. It would, therefore, take quite an appreciable time for him to approach the track and cross it to the west rail; and it was the duty of the defendant's motorman to notice this condition, and to regulate the speed of the car so as to avoid an injury. We cannot assume that the deceased knew that the car would stop upon the crossing so as to compel him to turn out and go around the car. Yet that is just what happened. It is quite evident, if the plaintiff's witnesses are to be believed, that had this south-bound car not stopped the deceased would have crossed in safety. That car, however, did stop, and by it the deceased was prevented from passing directly from the north-bound track. An emergency was thus presented which called for immediate action, and one of the witnesses

for the plaintiff testified that he then stood in about the middle of the track between the rails, and apparently hesitated as to what to do. He endeavored to get off the track by passing around the south-bound car.    According to the evidence of the plaintiff's witnesses, he had almost accomplished this purpose, as he was just about to step from the rail, or had stepped over it, when the north-bound car struck him. The situation of danger was thus caused, not by the negligent act of the plaintiff in attempting to cross the track, but by the fact that his crossing was interfered with by the south-bound car of the defendant in stopping upon the crosswalk.    The fact that he then attempted to go around the car, instead of retracing his steps and allowing this north-bound car to pass, calling as it did for the exercise of judgment at a moment of danger, was not, as a matter of law, contributory negligence, but was a question for the jury.    As was stated by the court of appeals in the case of Parsons v. Railroad Co., 113 N. Y. 363, 21 N. E. 145:

"The question is whether the injured party, under all the circumstances of the case, exercised that degree of care and caution which prudent persons, of ordinary intelligence, usually exercise under like circumstances. This rule must in all cases, except those marked by gross and inexcusable negligence, render the question involved one of fact for the jury."

We cannot say as a matter of law that the act of the deceased was "marked by gross and inexcusable negligence."    He attempted to cross this avenue at a time of the day when these cars were passing almost continuously.    He crossed in front of an approaching car, which the jury might have found could have been easily stopped after he was either upon the track or about to go upon the track, if the motorman had been looking; but, even at the speed with which the car was coming, he could have crossed in safety, but for the fact that one of the other cars of the defendant's road stopped in such a way as to require him to remain longer upon the track in order to pass around it, and he was struck by the car just as he was stepping off the track.    Under such circumstances, it was not contributory negligence, as a matter of law, for him to attempt to cross, as the injury was occasioned, not because he had not sufficient time to cross directly, but because he did not have sufficient time to walk around the end of the car which had stopped in such a way as to block the crosswalk. Under such circumstances, it seems to us that it was a case for the jury to determine whether, considering the situation, the presumption as to the management of the car the deceased was entitled to consider, and the condition of the crosswalk at the time, the deceased was guilty of contributory negligence.    I think, therefore, that the court below was right in denying the motion to dismiss the complaint or to direct a verdict for the defendant.

Counsel for appellant also relied upon the refusal of the court to charge several requests presented.    The first one to which our attention is called is as follows:

"That it was the duty of the deceased, in crossing the defendant's tracks, to look and listen for the approach of a car, and endeavor, in so far as reasonably in his power, to avoid coming in contact with it, and, if he failed in this duty, he is guilty of contributory negligence, and your verdict shall be for the defendant."

This request the court refused, but modified it by stating that it was his duty to look when he went on the track, leaving it to the jury to say whether, under the circumstances, an ordinarily prudent man should have listened, "and, if you find he did not, of course he was guilty of contributory negligence." · We think this request went much too far, and that the charge of the court was as favorable to the defendant as was justified by the facts of the case.

The distinction between a street car and a steam railroad, running at a high rate of speed through a country, as to the degree of care which a person about to cross the track must exercise to avoid being guilty of contributory negligence, has been often adverted to.   A person crossing a steam railroad, where the trains run at a high rate of speed, is bound, as a matter of law, to stop, look, and listen for an approaching train, and his failure to do so is, as a matter of law, contributory negligence.   On crossing a city street, however, a different rule applies.   Under such circumstances, he is bound to use his faculties to ascertain whether there are vehicles coming, and to exercise vigilance to keep out of the way of an approaching car, but he has not only to avoid cars, but other vehicles in the street; and it cannot be said, as a matter of law, that he is bound to listen for the approach of a car in addition to looking for it.   Under the circumstances in this case, the approaching car was in full sight.   It was broad daylight.   Nothing obstructed its view, and there is nothing to show that a look at the car did not convey to this deceased all of the information as to its position that he would have acquired had he also listened to it.   His failure to listen for the approaching car, if he looked at it and saw it, could not in any way have contributed to the injury. The court charged that the jury should find that he looked as he approached the track.   The court very fairly left it for the jury to say whether what the decedent did as he approached the track was the act of an ordinarily prudent person, and the jury had the facts before them, and it was for them to say, under the circumstances, whether the plaintiff was guilty of contributory negligence.   The mere fact that he did not listen, when listening would have added nothing to his information as to the position of the car, was not, as a matter of law, contributory negligence, and would not justify the court in instructing the jury that they must find for the defendant.

The other alleged error in the charge related to the two requests as to the condition of the roadway under foot, but, under the circumstances, we do not think the defendant was entitled to the instruction asked for.   Counsel for the defendant first requested the court to charge as follows:

"If you believe that the condition of the roadway under foot was not such as to require a man of the age of the deceased, using reasonable care for his own safety, to keep his eyes towards the ground in crossing the street, your verdict shall be for the defendant."

The second request was that there was no proof in the case that the condition of the roadway was such as to require the deceased, exercising reasonable care, to fix his attention upon it while crossing the street.   The evidence is that it was a muggy day; that the road was wet and slippery.   It further appeared by the evidence of the

defendant's witnesses that when the deceased crossed the street, and crossed the track, his eyes were down, fixed upon the roadway. Whether or not it was negligence for him to walk with his eyes fixed upon the ground was a question for the jury, and in determining that question they were entitled to take into consideration the fact that it was a wet day and that the street was slippery. The mere fact that a man looked towards the roadway as he crossed the track was not, as a matter of law, contributory negligence, even if the roadway was perfect. If he did not look at all to notice an approaching train, or did not use any means to ascertain the location of the car before he attempted to cross, he was guilty of contributory negligence; but the mere fact that he looked upon the ground as he approached the track would not, of itself, justify the court in directing the jury to find a verdict for the defendant. It was a fact for the consideration of the jury as to the means that he used to ascertain the position of the approaching car, and for them to say whether what he did was sufficient to show the absence of contributory negligence. The court quite correctly modified the request to charge by leaving the question of the condition of the street to the jury, and whether the deceased was guilty of contributory negligence; and the request to charge that there was no proof that the condition of the roadway was such as to require the deceased, exercising reasonable care, to fix his attention upon it in crossing the street, was properly refused, as the fact that a street is wet and slippery does require some care in crossing, and there was evidence to justify the jury in finding this condition of the street.

There are several objections to the ruling upon the evidence to which our attention is called by counsel for the appellant. We have examined them, and do not think that any of them would justify a reversal of the judgment, or are of sufficient importance to require notice. Upon the whole case, while the question is a close one, and while the evidence as to the means adopted by the deceased to observe the approaching car is not very satisfactory, I think the question, both as to the negligence of the defendant and the contributory negligence on the part of the plaintiff's intestate, was a question for the jury, which was fairly submitted in a charge as favorable to the defendant as it could rightfully request, and no error was committed which requires a reversal of the judgment.

PATTERSON, J., concurs.