(94 App. Div. 388.)

## BARNEY v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department.   May 20, 1904.)

1. STREET RAILWAYS—PERSONAL INJURIES—PEDESTRIANS.

In an action for personal injuries by one who was run over by a street car while she was crossing the street, evidence examined, and *held* insufficient to support a verdict for plaintiff both on the issue of contributory negligence and on the issue of the negligence of defendant.

2. SAME—USE OF STREET—PARAMOUNT RIGHT.

Though a pedestrian has a right to cross a street between crossings, he is bound to use due diligence to discover the approach of a car, and, if a car is approaching within such distance that he would not have time to pass in safety, it is his duty to wait and accord to the street railway company its paramount right to the use of the track between intersecting streets.

3. SAME—CONTRIBUTORY NEGLIGENCE.

If plaintiff, in crossing a street between crossings, passed behind a south-bound wagon, and stepped immediately on the north-bound track of a street railway, without looking or waiting to discover the approach of a car from the south, she was guilty of contributory negligence.

4. SAME.

If plaintiff, in crossing a street between crossings, hurriedly passed in front of a south-bound wagon and onto the street car track in front of a north-bound car which was in plain sight, and there was nothing to obstruct plaintiff's view, she, knowing that the wagon would prevent her retracing her steps, was guilty of contributory negligence in not exercising greater care to discover the approach of the car.

5. SAME—NEGLIGENCE.

Where plaintiff started to cross a well-lighted street between crossings, where there was nothing to obstruct her view, the driver of an approaching street car had a right to assume that plaintiff would stop and allow it to pass.

6. SAME.

The fact that the driver of a street car which was approaching plaintiff, who was crossing a street between crossings in plain view of the car, was temporarily engaged in conversation with a passenger in answer to a question, did not necessarily constitute negligence, since, if he had been looking ahead, he would not have been expected to stop the car.

Appeal from Trial Term, New York County.

Action by Louisa Barney against the Metropolitan Street Railway Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before McLAUGHLIN, PATTERSON, O'BRIEN, INGRAHAM and LAUGHLIN, JJ.

Charles F. Brown, for appellant.

Edwin G. Davis, for respondent.

LAUGHLIN, J: The action is brought to recover damages for personal injuries sustained by the plaintiff through the alleged negligence of the defendant. An action brought by the husband of the plaintiff to recover for the loss of services of his wife was tried with this action by consent, and a separate verdict was rendered for the amount of damages sustained by each. The appeal book does not

¶ 3. See Street Railroads, vol. 44, Cent. Dig. §§ 207, 208.

contain the pleadings or any notice of appeal in the action brought by the husband, but the appeal has been argued as if it embraced both actions. Upon the argument of the appeal, counsel for the appellant expressly waived any claim that the verdict is against the weight of evidence. It is not claimed that the verdict is excessive. The appellant contends that the court erred in the reception and exclusion of certain evidence. The exceptions in that regard have been considered, and we are of opinion that they do not present prejudicial error. No exception was taken to the charge. Counsel for the appellant, at the close of the evidence, moved for a dismissal of the complaint upon the ground that the plaintiff failed to show freedom from contributory negligence, and that no negligence on the part of the defendant was proved; and to the denial of the motion exceptions were taken. These exceptions present the only questions requiring serious consideration, and they are questions of law as to whether the evidence required the submission of the case to the jury.

We are of opinion that the motion should have been granted upon both grounds. The plaintiff was 73 years of age, but the evidence on the question of damages tends to show that she was unusually strong, healthy, and active for one of her age, and that her faculties of sight and hearing were good, and had not been materially impaired by age. It may well be that the infirmity of old age seriously affected the plaintiff's conduct, and that this should have been observed by the driver; but the testimony designed to enhance the damages precludes any such inference. She had a cataract on her left eye which somewhat affected the sight; but the car which inflicted the injuries approached from her right side, and it does not appear that this affliction to her left eye affected her ability to discover its approach. She resided at the southeasterly corner of Thirteenth street and Avenue A. The accident occurred at about half past 6 o'clock, or later, in the evening, on the 8th day of December, 1900. She had been to a grocery store on the westerly side of the avenue, the third door south of Thirteenth street, where she purchased a can of milk, and with this in her hand, and a shawl drawn loosely over her head, but not in such a manner as to materially affect her hearing, she proceeded to cross the avenue nearly in a direct line toward the east, and about 40 feet south of the southerly crosswalk, on her way to a bakery on the east side of the avenue south of Thirteenth street. Just as she stepped upon or over the westerly rail of the easterly track, she was struck by the collar of the nigh or left-hand horse attached to a street car passing northerly on the easterly track of Avenue A, and knocked down, and the right front wheel of the car passed over her left leg below the knee, necessitating its amputation. There was a double track in the avenue, and the distance from the westerly curb to the westerly rail of the northbound or easterly track was 29 feet 9 inches.

The testimony of the witnesses for the plaintiff is conflicting as to the manner in which the accident occurred. The plaintiff testified that, when she started to cross the street:

"I done nothing. I waited to cross the street, and I wanted to get my cake. Q. Did you look in either direction? A. Yes, I looked. I looked down. When I looked I didn't see no car. When I wanted to cross the street,

thinking of getting my cake, I could not see any car, and I walked ahead. When I met with the accident I don't know how it happened, but when they told me to come out from under the car I didn't know if it was a car or anything else I was under. This was a horse car. I didn't see the horses before I was struck. I didn't see anything."

—That it was very light, and the street was well lighted; that she saw no wagon or vehicle in the street at the time, except a wagon going down the south-bound track, which had passed before she left the sidewalk; that she "crossed the westerly railroad track at least three or four houses, or about two houses behind that wagon. It was about two houses below me at the time I started to cross the track." This is the substance of her testimony bearing upon the question of her freedom from contributory negligence or the negligence of the defendant.

The clerk in the grocery store of whom she purchased the milk testified that he walked outside, saw her on the track, saw the car coming, and saw the collar of the horse strike her; that it did not knock her down, but turned her around a couple of times, and then she fell; that he heard the driver of the car "holler" to her when he was about 18 feet from her, "but it was too late"; that "the team was going fast"; that, "after the lady passed out of the store and got into the street, before she got to the car track, she looked for any wagon or car or anything, and she did not see anything"; that he saw the car when it was at the corner of Twelfth street; that the street was well lighted, and that there was no vehicle of any kind in the street, except the car and a wagon going south, which was three buildings below the store toward Twelfth street when she left the sidewalk; that "this car was coming in full sight on a lighted street; when she crossed the west track, * * * this car by which she subsequently got hit was then about Twelfth street"; that the plaintiff did not walk very fast—"she was an old woman, and she could not walk very fast"; that he could not tell in what direction she was looking when she got to the west track, or when she got in the space between the tracks; that when she reached the space between the tracks the heads of the horses attached to the car were very close to her; that "she walked right on"; that there were lights in the street; that "when she put her foot on the track on which the car was running, the horses' heads attached to that car" were about eight feet from her, and the car was "coming fast and in full sight"; that at this time the driver hallooed again; "he hollered the whole run. I do not remember how many times he hollered—at least twice"; "I don't know of anything there to prevent her seeing this car if she had looked. The car was coming, and in full sight and lighted up, at that time when she put her foot there"; that she walked right straight ahead, and it looked to him as if she did not pay any attention to the driver's shouting.

A newsman who had a stand at the northwesterly corner of Avenue A and Thirteenth street testified that he saw the accident; that the car was moving at the regular speed; that he heard no "whistle"; that the plaintiff while crossing the street was looking straight ahead; that he did not hear the car coming, but there were bells on each horse; that the plaintiff crossed behind the wagon which was going south,

and not far from it; that "when she got between the two tracks she did not stop to look up or down, she went straight ahead"; that when she put her foot on or over the first rail of the east track "the horses were right on her"; that he heard the driver of the car shout as the plaintiff stepped upon the track; that when he saw the plaintiff fall in front of the horses "the driver of the car was trying to hold up the car, of course"; that he saw the car coming before the plaintiff left the sidewalk; that it was lighted, and "came at the regular street car jog, a moderate gait"; that the car only moved a few feet after she stepped on the track, and after it stopped she was between the front and rear wheels, and he helped to pick her up.

A passenger on the car, who was standing on the right side of the front platform, testified that another passenger who was standing on the left side of the front platform spoke to the driver, and that the driver had his head turned towards the west and towards this passenger, talking with him, when the plaintiff stepped upon the track; that the driver then turned round and endeavored to stop the car, but it was too late; that "the horses were very close to her when she started to holler, so he wanted to stop. The horses were not very close to her when she stepped on the track. They were so close as from here to this little door, and she started to cross. * * * When she stepped on the track in front of the horses, the driver did not put on the brake pretty quick. She was hollering, and she could not run back because the other side of the wagon came. This wagon was on the other side of the track. On the west side of the track * * * she came out across the street; not from behind the wagon; in front of the wagon. She just passed the wagon, and she wanted to run over the track, and she hollered, and she wanted to run back, and she could not. And she ran under the horses." The distance which the witness indicated that the horses were from the plaintiff when she stepped on the track was measured, and found to be 5 feet 3 inches. This comprises the substance of the material evidence given on behalf of the plaintiff.

The defendant called the driver, who testified that the car was going at the rate of about 5 miles an hour; that he had been a street car driver 16 or 17 years; that he had been driving this team 6 or 7 months; that the horses were "very tractable"; that he held the reins in his left hand, and his right hand was on the brake; that there were two passengers on the front platform, one of whom had since died; that he was not talking to either, but was looking ahead; that a wagon was passing south on the south-bound track, and, just as it passed, the plaintiff "ran right in front of my horses"; that "just as she stepped on the rail the horses were right on top of her head"; that he pulled his horses back against the dashboard, put on the brake and shouted, but it was too late, and the nigh horse struck her.

Another passenger on the car was called by the defendant, and he testified that he was sitting to the right in front, looking out towards the driver; that his attention was attracted by hearing the driver shout; that the plaintiff was then coming across the avenue, and just stepped on the track, holding her shawl with one hand and a parcel in the other; that as the plaintiff stepped on the track the heads of the horses were right near her, but the driver pulled the horses to the right and

put on the brake; that a wagon was passing, and the plaintiff came onto the track just as the horses passed the wagon.

Another witness called by the defendant was standing engaged in conversation at the northeast corner of Thirteenth street and Avenue A. He testified that he saw the plaintiff come out of the grocery store and start across the street; that she was looking straight in front of her, and "paused a few moments" in the carriageway two or three feet from the westerly track to let a wagon pass southerly; that she emerged from behind the wagon on a fast walk, "looking straight ahead of her. She did not look up or down"; that, when she stepped on the track on which the car was coming, the horses' heads were within about two feet of her; that the horses were going about five miles an hour; that as she stepped on the track he heard a shout, and saw the driver put on the brakes.

Another witness called by the defendant was standing on the curb at the southwesterly corner of Thirteenth street and Avenue A. He testified that he saw the wagon coming along, saw the car about two doors above Twelfth street, and saw the plaintiff step off the curb and wait to let the wagon pass, "and the moment it was past she stepped over behind the end of the wagon in front of the horses' heads. I was too late to save her being knocked down, and I ran on the side and helped pick her up and carried her to the sidewalk"; that when she stepped on the north-bound track the horses' heads were within about three feet of her; that he heard the driver shouting, and saw him pull his horses to the right in an endeavor to prevent their going over the plaintiff, and apply the brakes; that there were bells on the horses; that he did not see the plaintiff look up or down; that "she looked straight ahead," and did not pause after the wagon passed, and walked faster than a woman ordinarily does.

Another witness called by the defendant was sitting in a bootblack's chair at the southwesterly corner of Avenue A and Thirteenth street, and he testified that he saw plaintiff in the carriageway within about three feet of the south-bound track when the wagon was passing to the south, and that she passed right behind the wagon, and, looking ahead, without pausing, walked quickly upon the track upon which the car was approaching, and within two or three feet of the horses' heads; that the street was well lighted; that there were bells on the horses; that the driver shouted and applied the brakes "as fast as he could."

The conductor was not called, but the defendant showed that he was in North Carolina. This is the substance of the evidence given in behalf of the defendant.

The plaintiff, as has been seen, testifies that she looked for a car, but saw none, and another witness testifies that he saw her apparently looking for a car, but neither of them locates her position at this time very definitely with reference to the track on which the car was approaching. It is to be borne in mind that the accident did not occur at a regular crossing, and, while the plaintiff had the right to cross the street between crossings, she was bound in the exercise of this right to use due diligence to discover the approach of a car, because, if a car was approaching within such a distance that she would not

have time to pass in safety before its arrival, it was her duty to wait in a place of safety, and accord to the defendant its paramount right to the use of the track between intersecting streets. Thompson v. Buffalo Railway Co., 145 N. Y. 197, 39 N. E. 709; Fenton v. Second Ave. Ry. Co., 125 N. Y. 625, 26 N. E. 967. If, as testified by some of the witnesses, she emerged from behind the wagon passing southerly, and stepped upon the north-bound track without looking or waiting until she had an opportunity of looking to discover the approach of a car from the south, she was guilty of contributory negligence. Purdy v. N. Y. C. & H. R. R. Co., 87 Hun, 97, 33 N. Y. Supp. 952; Trauber v. Third Ave. Ry. Co., 80 App. Div. 37; 80 N. Y. Supp. 231; Little v. Third Ave. Ry. Co., 83 App. Div. 330, 82 N. Y. Supp. 55, affirmed (Ct. of Appeals, April, 1904) 178 N. Y. ——, 70 N. E. 1102. If, as one of the witnesses testifies, she hurriedly passed in front of the wagon and onto the track in front of the car when the car was in plain sight and nothing to obstruct her view, it is likewise clear that, knowing that the wagon would prevent her retracing her steps, she was guilty of contributory negligence in not exercising greater care to discover the approach of the car before proceeding. Trauber v. Third Ave. R. R. Co., supra; Martin v. Third Ave. R. R. Co., 27 App. Div. 52, 50 N. Y. Supp. 284; Jackson v. Union Ry. Co., 77 App. Div. 161, 78 N. Y. Supp. 1096. If, however, as she and her witnesses claim, the wagon had passed so far to the south that it was not a factor in the case, then it is likewise difficult to escape the conclusion that she was guilty of contributory negligence. The conclusion is irresistible that she either did not look with care, or that, when she looked, if she did not see the car, it must have been a considerable distance away, and the interval of time before she stepped upon the track was so great that she should have looked again. Madigan v. Third Ave. Ry. Co., 68 App. Div. 123, 74 N. Y. Supp. 143; Biederman v. Dry Dock E. B. & B. R. R. Co., 54 App. Div. 291, 66 N. Y. Supp. 594; Swart v. N. Y. C. & H. R. R. Co., 81 App. Div. 402, 80 N. Y. Supp. 906, affirmed 177 N. Y. 529, 69 N. E. 1131; McKinley v. Met. St. Ry. Co., 91 App. Div. 153, 86 N. Y. Supp. 461.

It is equally clear, we think, that the defendant was not guilty of negligence. The driver had a right to assume that in crossing at this point, and with the car so near, the plaintiff would stop and allow it to pass, as was her duty. It is undisputed that there were bells on the horses, and, if there was no obstruction to sight or view, he had a right to assume, until the contrary was manifest, that she was aware of the approach of the car, and would stop before reaching a point of danger. Assuming that the driver did temporarily engage in conversation with a passenger in answer to a question, as testified to by one of the witnesses for the plaintiff, that did not necessarily constitute negligence. If he had been looking ahead, it is difficult to see how he would have been called upon to do anything until it was too late. According to the evidence, viewed in the most favorable light to the plaintiff, it is manifest, we think, that when she stepped upon the track the horses were so close to her that the accident could not have been avoided by the exercise of ordinary care. If the driver had been looking at her all the time, he was not required to attempt to stop his car until it became manifest that she was about to step in

front of it.   Kappus v. Met. St. Ry. Co., 82 App. Div. 13, 81 N. Y. Supp. 442.   Until that time, the point being between crossings, he had a right to assume that she would give the car the right of way.   Thompson Case, supra; Weiss v. Met. St. Ry. Co., 33 App. Div. 221, 53 N. Y. Supp. 449, affirmed 165 N. Y. 665, 59 N. E. 1132.   The evidence indicating that the driver temporarily turned his head to the west while engaged in this conversation with the passenger is the only item of evidence upon which an argument can be based that the defendant was guilty of negligence.   The evidence shows that the car was running at a proper rate of speed, and that the driver did everything possible to prevent injury to the plaintiff after he discovered that she was in danger.

It follows, therefore, that the judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event.   All concur; PATTERSON, J., on ground of insufficiency of proof of negligence of the driver of the car.