CARL HINZ, Respondent, *v.* EIGHTH AVENUE RAILROAD COMPANY, Appellant.

First Department, January 15, 1926.

Street railways — action for injuries suffered by plaintiff when defendant's trolley car struck him as he was attempting to cross plaza between blocks — instruction that if plaintiff saw car approaching, question of signals was not material, was law of case — speed of car, about eight miles per hour, not negligence while traveling between blocks — plaintiff in failing to look until he was at track and in attempting to pass ahead of street car was guilty of negligence as matter of law.

In an action to recover damages for injuries suffered by the plaintiff who was struck by one of defendant's street cars while he was crossing a plaza in New York city between blocks just after the car, which was moving slowly, had left a safety zone, an instruction that if the plaintiff saw the car approaching as he testified, the question whether or not signals were given was not material, became the law of the case. The speed of the trolley car which was traveling at about eight miles per hour at the time of the accident does not constitute negligence in view of the fact that the place of the accident was between blocks, not at a street crossing.

The plaintiff was guilty of contributory negligence, as a matter of law, since it appears by his own testimony that he did not look for the approaching street

car until he was about to enter upon the track and then when he saw the car approaching, although slowly, he attempted to pass in front of it. The fact that a taxicab may have obstructed his vision just prior to the accident required the plaintiff to exercise greater vigilance, since he knew the car was approaching slowly, and furthermore, he did not have the right to assume that because the street car was moving slowly when he first saw it, it would not pick up speed as it traveled toward him.

FINCH, J., dissents, with memorandum.

APPEAL by the defendant, Eighth Avenue Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 21st day of April, 1925, upon the verdict of a jury for $20,000, and also from an order entered in said clerk's office on the 4th day of May, 1925, denying defendant's motion for a new trial made upon the minutes.

*Michel Kirtland* [*William J. Curtin* of counsel], for the appellant.

*Thomas E. Flynn* [*George F. Hickey* of counsel], for the respondent.

MERRELL, J. The action was to recover for personal injuries alleged by the plaintiff to have been sustained by reason of the negligence of a motorman in the employ of the defendant in operating one of defendant's surface cars on Central Park West in the borough of Manhattan, New York city. The jury rendered a verdict in plaintiff's favor at the close of the trial for $20,000 damages.

The accident occurred in the plaza on Eighth avenue or Central Park West at One Hundred and Tenth street, known as Cathedral Parkway. The negligence which the plaintiff charged against the defendant in his complaint was the negligent operation of defendant's surface car at a high and excessive rate of speed, in failing to give warning by signal or otherwise of the approach of defendant's car, in failing to check the speed of such car, and in failing to stop the same so as to avoid striking the plaintiff.

The plaintiff was by occupation a porter and at the time of the trial on April 20, 1925, was sixty-two years of age. On the night in question he was proceeding toward his apartment at 2742 Madison avenue from his work and had alighted from the subway car and had come upon One Hundred and Tenth street west of Eighth avenue. Plaintiff testified that he first crossed from the northerly side to the southerly side of One Hundred and Tenth street, and that he then walked on the sidewalk and started to cross the plaza toward the easterly or park side thereof in accordance with the route usually taken by him. At the point where the plaintiff started to cross there was a plaza through which Eighth avenue or Central Park West ran. The plaza was some-

what elliptical in shape, being about 173 feet wide from east to west and 237 feet from north to south. The double car tracks of the defendant run practically in a northerly and southerly course through the center of the plaza. The easterly track is the north-bound and the westerly track the south-bound track of defendant's surface road. Near the center of the plaza there are six traffic posts, three on either side of the railroad tracks, set in a semi-circular form, and which form the so-called " traffic zone " in the plaza. The plaintiff testified that he started to cross the plaza from the point where the southerly sidewalk on One Hundred and Tenth street extended to the plaza in an easterly direction; that he walked slowly, crossing on a course about fifteen or twenty feet southerly from the traffic posts; that when he was within a step of the westerly or south-bound track of the defendant's surface road he looked to the north and saw within the safety posts a trolley car of the defendant moving slowly toward him, and that at that time, as he looked, he saw the car moving slowly between the traffic posts and about fifteen or twenty feet away and that an automobile was coming from behind him; that the automobile, as he stepped upon the track, passed easterly across the track between the plaintiff and the approaching street car, and that as soon as the automobile passed, the car rushed upon the plaintiff and, as he expressed it, " the whole thing was over; " that when the car struck him " the automobile was already away " and he was between the rails of the south-bound track; that as the trolley car came from behind the passing automobile it shot through or shot by the rear of the automobile. Plaintiff testified that he heard no bell ring, and that the defendant's car struck him on the left side; that he fell down and lost consciousness because of an injury to his leg; that when he regained consciousness he was in the hospital on the day following. Plaintiff testified that the plaza at that point was well lighted by arc lights. His injuries resulted in two operations and the amputation of his right leg, and from November first until January fifteenth he was lying in bed continuously and suffered great pain until the time of the trial. On cross-examination the plaintiff admitted that at the time he approached the defendant's track and was struck he was walking slowly and continued to walk slowly up to the time when the accident happened; that he saw the street car coming through the traffic posts bound south the first time he saw the car, and that at that time he was just one step away from the west rail of the south-bound track; that the street car was lighted at the time. Plaintiff further testified that he had often crossed the plaza at the same place.

First Department, January, 1926,     [Vol. 215

Edward Monaghan, sworn as a witness in behalf of the plaintiff, testified that he was an eyewitness of the accident, and was driving a Twentieth Century taxicab at the time; that just prior to plaintiff's being struck he was driving easterly and crossing the circle; that he was following another taxicab which was ahead of him about twelve or fifteen feet, and that as he came out in the circle he looked both ways and noticed the defendant's trolley car in the traffic safety zone formed by the posts in the middle of the plaza; that the car was south bound and at the time was just creeping toward the southerly end of the zone.  Monaghan testified that as he was following the car ahead of him and when he thought he could pass over the defendant's tracks ahead of the car the motorman put on power and cut him off; that at that time the defendant's car was proceeding fast and a great deal faster than it had been traveling within the traffic zone posts; that the defendant's car passed behind the automobile which had crossed just ahead of Monaghan's taxicab, and that when he saw he could not cross ahead of the defendant's car he swung his cab to the right to avoid being hit; that just at that moment he saw the plaintiff on the defendant's south-bound track on which the trolley car was running, and that the front of the trolley car struck the plaintiff; that he was spun around and knocked over in front of the cab of the witness and upon the pavement; that the wheels of the trolley car did not pass over any part of the plaintiff, but that the plaintiff's right foot caught in the cylinder box of the forward trucks of the car and he was dragged several feet.  Monaghan testified that as he approached the crossing in his automobile he was traveling about twelve miles an hour, and that when his car came to a stop it stood alongside the defendant's trolley car and about eighteen inches distant therefrom, and that the plaintiff, after being struck, was four or five feet ahead of his car lying upon his face and in a diagonal position toward the northwest from the westerly side of the car.  Monaghan testified that he first saw the plaintiff when he was upon the car track just before he was struck, and that at that time he was standing somewhat nearer the easterly rail of the south-bound track than the westerly rail.

Archie Victor Mattor, sworn as a witness in behalf of the plaintiff, testified that he ran an automobile repairing and emergency establishment on the southwesterly side of the plaza and in plain view of the place where the accident occurred.  Mattor testified that he was going to his place of business and seeing a crowd of people, proceeded to the point where he found the plaintiff lying upon the pavement with his right foot caught beneath the defendant's car.  Mattor testified that when he reached the scene of the

accident the back of the trolley car had not cleared the safety zone.

The defendant's motorman, James Murdock, who was in control of the defendant's car at the time of the accident, testified that at the time of the trial he was not in the defendant's employ, having resigned some three weeks after the accident; that on the evening in question his car was passing southerly across the plaza and as he was leaving the traffic zone he saw three taxicabs passing from the west toward the east across the plaza ahead of his car; that two of them nearly abreast went ahead, but that the other one drew up and gave the motorman the right of way; that this taxicab stopped about twenty-five feet south of the traffic zone, and was about thirty feet away from the trolley car when it stopped to let him pass. Murdock, the motorman, testified that trolley cars never stopped in the safety zone to take on or let off passengers, but passed continuously through the plaza from the north to the south. The motorman testified that just after he passed the taxi which had stopped to allow him the right of way, he saw the plaintiff ahead of him walking from the west toward the east and about twelve feet south of the taxicab and about four or five feet from the motorman's rail. He testified that he at once sounded his gong, but that the plaintiff did not look up or pay any attention to it; that he applied his emergency brake, but that the right corner post of the car struck plaintiff. The motorman testified that the plaintiff never got upon the tracks, and that his car stopped in about twelve or fifteen feet after striking the plaintiff, and that no part of the plaintiff's body went under the front part of his car, but that he fell to the right of the motorman and caught his foot around the journal box of the front wheel. The street car in question was about thirty-five feet in length. On cross-examination the motorman testified that the usual stopping place was at the north side of One Hundred and Tenth street, which was a regulation stop. He further testified that the traffic zone was quite a long affair, and that it just about took in his thirty-five-foot car; that cars never stopped to take on or let off passengers in the traffic zone; that it was the custom to slow up when entering the traffic zone and wait for buses or vehicles to pass by, and that on this occasion he slowed up to allow two buses to pass in front of his car, passing through the traffic zone at a very slow rate of speed, and that after passing the taxicab which had stopped for him he put on his power and then for the first time saw the plaintiff about twelve feet away from the taxicab, and that at that time his car was going at from seven to eight miles an hour; that when it was passing

through the safety zone it was just crawling along at about half that rate of speed; that in going seven or eight miles an hour it would take twenty-five feet to stop his car, and that on this occasion his car went about fifteen feet after hitting the plaintiff.

Benjamin Miller, a taxicab driver, was sworn in behalf of the defendant, and testified that he was at the place of the accident on the evening in question, and saw the plaintiff struck; that the plaintiff was hit and fell down and the car ran over his leg, and that after striking him the car went three or four feet. Miller testified that two taxicabs crossed in front of the defendant's car as he approached the crossing; that he was following the other two cars, and they were all proceeding at about twelve miles an hour; that when these other automobiles passed the trolley track the trolley car was down in the safety zone, just coming through the traffic zone, and that his car was standing ten or twelve feet south of the safety zone; that the trolley car was going through the safety zone at about eight or seven miles an hour, and that it did not go faster after leaving the safety zone. Miller attempted to describe the bystanders and stated that Mattor, who extricated the plaintiff and stopped the flow of blood, was dressed as a businessman. Mattor himself testified that at the time he was dressed in dirty, blue overalls and a skull cap used in connection with his repair work. The cross-examination of Miller was such as to raise some question as to whether he was actually present at the place of the accident.

Walter McNichols, the conductor in charge of the defendant's trolley car which struck the plaintiff, testified that while he did not see the plaintiff struck, his attention was called to the accident after leaving the traffic zone by the sounding of the gong on the trolley car by the motorman and the jamming on of the emergency brake.

The only negligence charged by the plaintiff against the defendant was, *first*, a failure to give a signal of the approaching car or to warn the plaintiff of its approach; and, *second*, the operation of the car at an excessive rate of speed. The justice presiding at the trial, at the request of the defendant, charged the jury that if the plaintiff saw the car approaching, the question as to whether any bell was rung was of no importance. Plaintiff having testified that he did see the approaching car at about fifteen to twenty feet to the north of him, the charge of the court that the question of signal was of no importance became the law of the case. The only other negligence charged against the defendant was the excessive rate of speed at which the car was operated. I think upon the question of the defendant's negligence the testimony would be sufficient to raise a question of fact with reference thereto

were it not for the fact that the accident did not occur at a street crossing, but in the center of a plaza where the ". between blocks" rule applies and where the defendant's car had a paramount right of way. According to the testimony in behalf of the plaintiff, the defendant's car was stopped within six or seven feet after it struck the plaintiff. The fact that defendant's car was stopped in so short a distance would indicate that the same was well under the control of the motorman just before striking the plaintiff, and that the car was not proceeding at an excessive rate of speed, as claimed by the plaintiff. (*Carley* v. *Joline*, 159 App. Div. 780, 782; affd., 213 N. Y. 691; *Jackson* v. *Union R. Co.*, 77 App. Div. 161; *Casper* v. *Metropolitan St. R. Co.*, 84 id. 639.) It was held in *Zenner* v. *Brooklyn Heights R. R. Co.* (173 App. Div. 194–196) that plaintiff in that case in crossing the Williamsburg Plaza was governed by the "between blocks" rule, and this court held that the rights of the parties were not equal; that it was not a regular crossing, and was governed by the rule applicable to between-street crossings; that the right of a street railroad to operate its cars on its tracks was superior to that of a pedestrian (citing *Fenton* v. *Second Ave. R. R. Co.*, 126 N. Y. 625; *Thompson* v. *Buffalo R. Co.*, 145 id. 196; *Barney* v. *Metropolitan St. R. Co.*, 94 App. Div. 388).

It seems to me that, even assuming the negligence of defendant's motorman in the operation of the trolley car which struck the plaintiff, the plaintiff was himself guilty of contributory negligence preventing a recovery in the action. The plaintiff testified that he left the westerly curb of the plaza and proceeded across the plaza in an easterly direction walking slowly and had gone at least 104 feet before he looked up or saw the lighted car of the defendant. The plaintiff testified that he knew he had to cross this wide plaza, and had gone 104 feet before looking, and that he knew if he looked he could have seen an approaching car, but that he did not look until he was within one step of the rail, and at that time he saw the defendant's car approaching him 15 to 20 feet away, but that he continued to walk slowly until he was struck. Plaintiff testified as the taxicab started to pass him his view of the approaching car was obstructed. If the plaintiff's view was obstructed, then certainly the view that the motorman had of the plaintiff was obstructed by the intervening taxicab. The plaintiff knew of the approaching car when he was within a step of the car track, and I am of the opinion that when, instead of stepping back and allowing the car to pass, he proceeded to walk slowly across the track, he was guilty of such negligence as precludes any recovery on his part herein. (*Furlong* v. *Metropolitan St. R. Co.*, 103 App. Div. 215.) I do not think the plaintiff had any right to assume that

because the car was moving slowly when he saw it that it would not pick up speed as it traveled toward him. (*Thompson* v. *Metropolitan St. R. Co.*, 89 App. Div. 10, 13; *McEntee* v. *Metropolitan St. R. Co.*, 110 id. 673, 675.) Plaintiff was called upon to exercise increased vigilance the moment his view of the approaching car was obscured by the taxicab. (*Wecker* v. *Brooklyn, Queens County & S. R. R. Co.*, 136 App. Div. 340, 341.) The plaintiff was as much obligated to look out for his own safety as was the motorman. Undoubtedly he thought he could get across the tracks if the taxicab could, but in this case he made a mistake. Even though we should hold the motorman guilty of negligence, it seems to me the plaintiff was equally guilty, and cannot recover. (*McGuire* v. *N. Y. Railways Co.*, 230 N. Y. 23, 27.) The negligence of the plaintiff in attempting to cross ahead of the approaching car of the defendant was all the greater because of the fact that he was not passing in front of the defendant's car at a regular crossing, but at a point where the "between blocks" rule applies. (*Unger* v. *Belt Line R. Corp.*, 234 N. Y. 86; *Peterson* v. *Ballantine & Sons*, 205 id. 29.)

For the reasons stated, I think the judgment and order appealed from should be reversed, with costs, and the plaintiff's complaint dismissed, with costs.

CLARKE, P. J., MARTIN and BURR, JJ., concur; FINCH, J., dissents.

FINCH, J. (dissenting). I dissent upon the ground that whether plaintiff was guilty of contributory negligence under the facts shown presented a question of fact and not of law. I, therefore, vote for affirmance.

Judgment reversed, with costs, and complaint dismissed, with costs.